**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No.: _____**

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY and
GEICO CASUALTY CO.,

       Plaintiffs,

vs.

NEW WORLD MEDICAL & REHAB, INC.,
f/k/a SPECIALTY MEDICAL CENTER
CORP., SAILY REYES, ERIC HEIDEMANN,
D.O., JORGE L. JORGE, M.D., MARILU
AVILA, A.P.R.N., ARTANG
REHABILITATION CENTER, LLC,
CARMEN PUPO, and TREVINE ALBERT,
D.O.,

       Defendants.

**Jury Trial Demand**

_____/

## **COMPLAINT**

Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company, and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), sue

Defendants and allege as follows:

1.      This action seeks to recover more than $3,000,000.00 that Defendants wrongfully

obtained from GEICO by submitting thousands of fraudulent and unlawful no-fault ("no-fault",

"personal injury protection", or "PIP") insurance charges through Defendants New World Medical

& Rehab, Inc. ("New World Medical") and Artang Rehabilitation Center, LLC ("Artang"), relating

to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable health care services

1

and goods, including purported examinations, physical therapy services, percutaneous electrical nerve stimulation ("PENS") treatments, and home medical equipment ("HME") (collectively the "Fraudulent Services"), that purportedly were provided to Florida automobile accident victims ("Insureds") who were eligible for coverage under GEICO no-fault insurance policies.

2.      In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $75,000.00 in pending, fraudulent, and unlawful PIP claims that Defendants have submitted through New World Medical and Artang because:

(i)      at all relevant times, Defendants operated in violation of Florida law, including Florida's Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"), Florida's False and Fraudulent Insurance Claims Statute, Fla. Stat. § 817.234(7) (the "False and Fraudulent Insurance Claims Statute"), Florida's Physical Therapy Practice Act, Fla. Stat. § 486.011-486.172 ("the Physical Therapy Act"), Florida's Patient Brokering Act, Fla. Stat. § 817.505 (the "Patient Brokering Act"), and Florida's Anti-Kickback Statute, Fla. Stat. § 456.054 (the "Anti-Kickback Statute");

(ii)     the underlying Fraudulent Services were not medically necessary, and were provided – to the extent provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly received the Fraudulent Services;

(iii)    in many cases, the Fraudulent Services were never legitimately provided in the first instance;

(iv)     Defendants' billing for the Fraudulent Services misrepresented the nature, extent, and results of the Fraudulent Services, in order to fraudulently inflate the charges submitted to GEICO;

(v)      New World Medical unlawfully billed GEICO for "physical therapy" services performed by massage therapists and unlicensed/unsupervised individuals; and

(vi)     Defendants' billing for the Fraudulent Services misrepresented the identities of the individuals who performed or directly supervised the Fraudulent Services, and was submitted in violation of the billing requirements set forth in the Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law").

3.      As set forth below, Defendants at all relevant times have known that:

(i) Defendants operated in violation of Florida law, including the Clinic Act, the False and Fraudulent Insurance Claims Statute, the Physical Therapy Act, the Patient Brokering Act, and the Anti-Kickback Statute;

(ii) the underlying Fraudulent Services were not medically necessary, and were provided – to the extent provided at all – pursuant to pre-determined fraudulent protocols designed to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly received the Fraudulent Services;

(iii) in many cases, the Fraudulent Services were never legitimately provided in the first instance;

(iv) Defendants' billing for the Fraudulent Services misrepresented the nature, extent, and results of the Fraudulent Services, in order to fraudulently inflate the charges submitted to GEICO;

(v) New World Medical unlawfully billed GEICO for "physical therapy" services performed by massage therapists and unlicensed/unsupervised individuals; and

(vi) Defendants' billing for the Fraudulent Services misrepresented the identities of the individuals who performed or directly supervised the Fraudulent Services, and was submitted in violation of the billing requirements set forth in the No-Fault Law.

4. As such, Defendants do not now have – and never had – any right to be compensated for the Fraudulent Services that were billed to GEICO.

5. The charts annexed hereto as Exhibit "1" and "2" set forth large, representative samples of the fraudulent and unlawful claims that have been identified to date that Defendants have submitted, or caused to be submitted, to GEICO.

6. Defendants' fraudulent and unlawful scheme began no later than 2021, and has continued uninterrupted since that time. As a result of Defendant's fraudulent and unlawful scheme, GEICO has incurred damages of more than $3,000,000.00.

## THE PARTIES

### I.     Plaintiffs

7. Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively, "GEICO") are Nebraska

corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

II.     **Defendants**

8.      Defendant New World Medical is a Florida corporation with its principal place of business in Miami, Florida. New World Medical was incorporated in Florida on March 26, 2021 as Specialty Medical Center Corp. ("Specialty Medical"). On June 15, 2021, Specialty Medical's name was changed to New World Medical.

9.      At all relevant times, New World Medical falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing requirements set forth in the Clinic Act, but in fact it was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

10.     New World Medical falsely purported to have Defendant Eric Heidemann, D.O. ("Heidemann") as its medical director from July 15, 2021 to February 1, 2022, and falsely purported to have Defendant Jorge L. Jorge, M.D. ("Jorge") as its medical director from February 1, 2022 to the present.

11.     Defendant Saily Reyes ("Reyes") resides in and is a citizen of Florida. Reyes purported to own and control New World Medical from June 15, 2021 to the present, and used New World Medical as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

12.     Defendant Heidemann resides in and is a citizen of Florida. Heidemann was licensed to practice medicine in Florida on December 19, 2020. Heidemann falsely purported to serve as a medical director at New World Medical from July 15, 2021 to February 1, 2022, and purported to perform Fraudulent Services on behalf of New World Medical.

13.     Defendant Jorge resides in and is a citizen of Florida. Jorge was licensed to practice medicine in Florida on May 26, 2021. Jorge falsely purported to serve as a medical director at New World Medical from February 1, 2022 to the present.

14.     Defendant Marilu Avila, A.P.R.N. ("Avila") resides in and is a resident of Florida. Avila was licensed as an advanced practice registered nurse in Florida on April 17, 2019. Avila was employed by or associated with New World Medical, and purported to perform Fraudulent Services on behalf of New World Medical.

15.     Defendant Artang is a Florida limited liability company with its principal place of business in Miami, Florida. Artang was organized in Florida on March 9, 2015.

16.     At all relevant times, Artang falsely purported to be a properly-licensed health care clinic that operated in compliance with the licensing requirements set forth in the Clinic Act, but in fact it was used as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

17.     Artang falsely purported to have Defendant Trevine Albert, D.O. ("Albert") at its medical director from June 15, 2020 to the present.

18.     Defendant Carmen Pupo ("Pupo") resides in and is a citizen of Florida. Pupo purported to own and control Artang from April 30, 2018 to the present, and used Artang as a vehicle to submit fraudulent and unlawful PIP insurance billing to GEICO and other insurers.

19.     Defendant Albert resides in and is a citizen of Florida. Albert was licensed to practice medicine in Florida on October 4, 2017. Albert falsely purported to serve as a medical director at Artang from June 15, 2020 to the present, and purported to perform Fraudulent Services on behalf of Artang.

5

### III.   **Other Relevant Individuals**

20.     Although GEICO has not named them as Defendants in this Complaint, Yener Valdes, A.P.R.N. ("Valdes"), Yasnay Fonte, L.M.T. ("Fonte"), and Ylaysa Savigne, L.M.T. ("Savigne") are also relevant to understanding Plaintiffs' claims in this action.

21.     Valdes is a licensed advanced practice registered nurse, was employed by or associated with New World Medical, and purported to perform many of the Fraudulent Services on behalf of New World Medical.

22.     Fonte is a licensed massage therapist, was employed by or associated with New World Medical, and purported to perform many of the Fraudulent Services on behalf of New World Medical.

23.     Savigne is a licensed massage therapist, was employed by or associated with New World Medical, and purported to perform many of the Fraudulent Services on behalf of New World Medical.

### **JURISDICTION AND VENUE**

24.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interests and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

25.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).

26.     In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

27.     Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS

I.     **An Overview of the Pertinent Law Governing No-Fault Insurance Reimbursement**

28.     Florida has a comprehensive statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is embodied within the Florida Motor Vehicle No-Fault Law (the "No-Fault Law," Fla. Stat. §§ 627.730-627.7405), which requires automobile insurers to provide Personal Injury Protection benefits ("PIP Benefits") to Insureds.

29.     Under the No-Fault Law, an Insured can assign their right to PIP Benefits to health care services providers in exchange for those services. See Fla. Stat. § 627.736. Pursuant to a duly executed assignment, a health care services provider may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms including the Health care Financing Administration insurance claim form (known as the "HCFA-1500 form"). See id.

30.     In order for a health care service to be eligible for PIP reimbursement, it must be "lawfully" provided. See Fla. Stat. § 627.736.

31.     Pursuant to the No-Fault Law, "lawful" or "lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." See Fla. Stat. § 627.732.

32.     Thus, health care services providers, including clinics licensed under the Clinic Act, may not recover PIP Benefits for health care services that were not provided in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of Florida and federal law related to the provision of the underlying services or treatment.

33.     Subject to certain limited exceptions that are not applicable in this case, the Clinic Act defines "clinic" to mean "an entity where health care services are provided to individuals and which tenders charges for reimbursement for such services, including a mobile clinic and a portable equipment provider." See Fla. Stat. § 400.9905.

34.     Pursuant to the Clinic Act, clinics operating in Florida must – among other things – appoint a physician as medical director or clinic director who must agree in writing to accept legal responsibility for certain enumerated]activities on behalf of the clinic. See Fla. Stat. § 400.9935(1).

35.     Among other things, a clinic medical director must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action." See Fla. Stat. § 400.9935(1).

36.     In addition, a clinic medical director must "[e]nsure that all practitioners providing health care services or supplies to patients maintain a current active and unencumbered Florida license," and "[e]nsure that all health care practitioners at the clinic have active appropriate certification or licensure for the level of care being provided." See Fla. Stat. § 400.9935(1).

37.     Moreover, a clinic medical director must "review any patient referral contracts or agreements executed by the clinic". See Fla. Stat. § 400.9935(1).

38.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this party but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable. A person who knowingly makes or causes to be made an unlawful charge commits theft within the meaning of, and punishable as provided in, [Fla. Stat. §] 812.014." See Fla. Stat. § 400.9935(3).

39.     Thus, pursuant to both the No-Fault Law and the Clinic Act, clinics that operate in violation of the Clinic Act's medical director or other operating requirements are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided.

40.     Under the False and Fraudulent Insurance Claims statute, it is unlawful for a health care provider to engage in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from PIP patients. See Fla. Stat. §817.234(7).

41.     Failure to make a good-faith effort to collect co-payments or deductibles renders the charges submitted by a health care provider unlawful and noncompensable.

42.     Florida's Patient Brokering Act, Fla. Stat. § 817.505, broadly prohibits any person from offering, paying, soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

43.     Likewise, Florida's Anti-Kickback Statute, Fla. Stat. § 456.054, prohibits any health care provider from offering, paying, soliciting, or receiving a kickback, directly or

9

indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients. Violations of the Anti-Kickback Statute also constitute violations of the Patient Brokering Act.

44.     Insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Patient Brokering Act or Anti-Kickback Statute, whether or not the underlying health care services were medically necessary or actually provided.

45.     Pursuant to the No-Fault Law, insurers such as GEICO are only required to pay PIP Benefits for "medically necessary" services. See Fla. Stat. § 627.736. At the same time, a health care services provider, including a clinic organized under the Clinic Act, is only eligible to receive PIP Benefits for medically necessary services. Id.

46.     Pursuant to the No-Fault Law, "medically necessary" means:

a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

(a) In accordance with generally accepted standards of medical practice;

(b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and

(c) Not primarily for the convenience of the patient, physician, or other health care provider.

See Fla. Stat. § 627.732.

47.     PIP reimbursement for health care services is limited to $2,500.00 per injured person, unless a physician, physician assistant, or advanced practice registered nurse determines that the injured person suffered from an "emergency medical condition", in which case health care providers can be reimbursed up to $10,000.00 per Insured for health care services. See Fla. Stat. § 627.736.

48.     Pursuant to the No-Fault Law, an "emergency medical condition"  means a "medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following: (a) serious jeopardy to patient health. (b) serious impairment to bodily functions. (c) serious dysfunction of any bodily organ or part." Fla. Stat. § 627.732.

49.     Prior to January 1, 2013, the No-Fault Law permitted health care services providers, including clinics licensed under the Clinic Act, to collect PIP Benefits for massage therapy and for services performed by massage therapists.

50.     However, the No-Fault Law was amended, effective January 1, 2013, to prohibit PIP reimbursement for massage or for services provided by massage therapists. See Fla. Stat. § 627.736(1)(a)(5).

51.     Pursuant to the Physical Therapy Act: (i) massage therapists may not practice physical therapy, or hold themselves out as being able to practice physical therapy, unless they have an actual license to practice physical therapy, as opposed to massage therapy; and (ii) unlicensed and unsupervised individuals may not practice physical therapy, or hold themselves out as being able to practice physical therapy.

52.     Pursuant to the Physical Therapy Act and the No-Fault Law, insurers such as GEICO are not required to pay for physical therapy services performed by massage therapists, or for physical therapy services that are unlawfully performed by unlicensed and unsupervised individuals.

53.     Pursuant to the No-Fault Law, insurers such as GEICO also are not required to pay PIP Benefits:

(i)     For any service or treatment that is "upcoded," meaning that it is billed using a billing code that would result in payment greater in amount than would be paid using a billing code that accurately describes the services performed;

(ii)    To any person who knowingly submits a false or misleading statement relating to the claim or charges; or

(iii)   With respect to a bill or statement that does not substantially meet the billing requirements set forth in the No-Fault Law.

See Fla. Stat. § 627.736.

54.     The No-Fault Law's billing requirements provide that all PIP billing must, to the extent applicable, comply with the instructions promulgated by the Centers for Medicare & Medicaid Services ("CMS") for the completion of HCFA-1500 forms, as well as the guidelines promulgated by the American Medical Association ("AMA") in connection with the use of current procedural terminology ("CPT") codes. See Fla. Stat. § 627.736.

55.     The instructions promulgated by CMS for the completion of HCFA-1500 forms require, among other things, that all HCFA-1500 forms set forth, in Box 31, the identity of the individual health care practitioner who personally performed or directly supervised the underlying health care services.

56.     To "directly supervise" a service, a health care practitioner "must be present in the office suite and immediately available to furnish assistance and direction throughout the performance of the procedure. It does not mean that the physician must be present in the room when the procedure is performed." See, e.g., Medicare Claims Processing Manual, Chapter 26 – Completing and Processing Form CMS-1500 Data Set.

57.     Insurers are not required to pay PIP Benefits to health care providers that misrepresent, in their billing, the identity of the individual health care practitioners who performed or directly supervised the underlying services.

II.     **Defendants' Interrelated Fraudulent Schemes**

58.     Since at least 2018, and continuing through the present day, Defendants conceived and implemented interrelated fraudulent schemes in which they billed GEICO and other Florida automobile insurers millions of dollars for medically unnecessary, illusory, unlawful, and otherwise non-reimbursable services.

A.     **The Unlawful Operation of the Clinic Defendants Without Legitimate Medical Directors**

59.     Because New World Medical and Artang (collectively the "Clinic Defendants") were subject to the Clinic Act, Reyes and Pupa (collectively the "Clinic Owner Defendants") could not operate the Clinic Defendants unless the Clinic Defendants had legitimate medical directors who actually performed the duties required of clinic medical directors.

60.     However, if the Clinic Defendants retained legitimate physicians to serve as the Clinic Defendants' medical directors, any such legitimate physicians actually would be obligated to fulfill the statutory requirements applicable to clinic medical directors, which would impede the Defendants' interrelated fraudulent schemes.

61.     Accordingly, Reyes recruited Heidemann and Jorge, who were licensed physicians willing to falsely pose as the legitimate medical directors at New World Medical, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to clinic medical directors at New World Medical.

62.     Likewise, Pupo recruited Albert, a licensed physician who was willing to falsely pose as the legitimate medical director at Artang, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director at Artang.

63.     In fact, Heidemann, Jorge, and Albert (collectively the "Clinic Medical Director Defendants") were never genuine medical directors for New World Medical and Artang,

13

respectively. Instead, from the beginning of each of their associations with the respective Clinic Defendants, they ceded all day-to-day decision-making and oversight regarding health care services at the Clinic Defendants to the respective Clinic Owner Defendants and their associates.

64.     In keeping with the fact that the Clinic Medical Director Defendants were never genuine medical directors for the Clinic Defendants, the Clinic Medical Director Defendants never legitimately conducted systematic reviews of the Clinic Defendants' billings to ensure that the billings were not fraudulent or unlawful, and instead permitted the Clinic Defendants to operate in the fraudulent and unlawful manner described herein.

65.     In the claims identified in Exhibits "1" and "2", Defendants falsely represented that New World Medical and Artang were in compliance with the Clinic Act and eligible to receive PIP reimbursement in the first instance.

66.     In fact, the Clinic Medical Director Defendants were not in compliance with the Clinic Act, and were not eligible to receive PIP reimbursement.

**B.     The Unlawful Billing for Services Performed by Massage Therapists and Unlicensed/Unsupervised Individuals at New World Medical, and Misrepresentations Regarding the Identities of the Treating Providers**

67.     New World Medical, Reyes, Heidemann, Jorge, and Avila billed for a limited range of health care goods and services through New World Medical, specifically: (i) purported patient examinations; (ii) purported physical therapy services; (iii) PENS treatments; and (iv) HME.

68.     As set forth in Exhibit "1", the substantial majority of the billing submitted through New World Medical to GEICO was for purported physical therapy services, including hot/cold packs, mechanical traction, paraffin bath, infrared therapy, ultrasound therapy, neuromuscular reeducation, therapeutic exercises, manual therapy, electrical stimulation, and iontophoresis.

69.     In the claims identified in Exhibit "1", the purported physical therapy services were unlawfully performed – to the extent that they were performed at all – by unlicensed and unsupervised individuals, and by massage therapists including Fonte and Savigne.

70.     New World Medical, Reyes, Heidemann, Jorge, and Avila (collectively the "New World Medical Defendants") were aware of the fact that they could not legally recover PIP Benefits for services performed by massage therapists or unsupervised and unlicensed individuals.

71.     As a result, and in order to conceal the fact that Fonte, Savigne, and other massage therapists and unsupervised/unlicensed individuals performed the purported physical therapy services that were unlawfully billed through New World Medical to GEICO, the New World Medical Defendants deliberately omitted any reference to Fonte, Savigne, and other massage therapists and unlicensed individuals associated with New World Medical on the HCFA-1500 forms that they used to bill for the putative physical therapy services.

72.     Instead, in the claims for physical therapy services identified in Exhibit "1", the New World Medical Defendants routinely and falsely listed Avila in Box 31 of the HCFA-1500 forms as the supposed provider or direct supervisor of physical therapy services.

73.     In fact, Avila, who was simultaneously purporting to work at numerous health care practices at numerous locations, did not legitimately perform or directly supervise the physical therapy services in the claims identified in Exhibit "1", and could not have legitimately performed or directly supervised the physical therapy services.

74.     For example:

(i)     On September 29, 2021, New World Medical, Reyes, Heidemann, and Avila purported to provide at least 40 individual physical therapy services to at least five individual Insureds, and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 10 hours of physical therapy services that required direct, one-to-one patient contact between the treating

15

provider and the Insureds throughout the services. That same day, Avila also purported to personally perform, or at least directly supervise: (a) two 30-minute initial examinations that were performed on two GEICO Insureds at New World Medical; and (b) at least 14 <u>additional</u> physical therapy services purportedly provided to at least two <u>additional</u> GEICO Insureds at separate clinics called Excellent Florida Health Corp. and New Life Medical Rehab, including at least 3.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 14.5 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on September 29, 2021.

(ii)     On August 15, 2022, New World Medical, Reyes, Jorge, and Avila purported to provide at least 42 individual physical therapy services to at least three individual Insureds, and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 10.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to personally perform, or at least directly supervise: (a) four 30-minute initial examinations that were performed on two GEICO Insureds at New World Medical; and (b) at least 21 <u>additional</u> physical therapy services purportedly provided to at least two <u>additional</u> GEICO Insureds at a separate clinic called ACL Health Center Corp., including at least 5.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 17.75 hours of services that Avila purported to personally perform, or at least directly supervise, at two different locations on August 15, 2022.

(iii)    On August 17, 2022, New World Medical, Reyes, Jorge, and Avila purported to provide at least 39 individual physical therapy services to at least three individual Insureds, and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 9.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to personally perform, or at least directly supervise: (a) three 20-minute follow-up examinations that were performed on three <u>additional</u> GEICO Insureds at ACL Health Center Corp.; and (b) at least 23 <u>additional</u> physical therapy services purportedly provided to at least two <u>additional</u> GEICO Insureds at ACL Health Center Corp., including at least 5.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 16.5 hours of services that Avila purported to personally perform, or at least directly supervise, at two different locations on August 17, 2022.

(iv)     On September 6, 2022, New World Medical, Reyes, Jorge, and Avila purported to provide at least 54 individual physical therapy services to at least seven individual Insureds, and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 13.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to personally perform, or at least directly supervise: (a) two 30-minute initial examinations and two 20-minute follow-up examinations on two GEICO Insureds at New World Medical and one 20-minute follow-up examination on 1 additional GEICO Insured ACL Health Center Corp.; and (b) at least 14 additional physical therapy services purportedly provided to two additional GEICO Insureds at ACL Health Center Corp., including at least 3.5 hours of services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 19 hours of services that Avila purported to personally perform, or at least directly supervise, at two different locations on September 6, 2022.

(v)      On November 17, 2022, New World Medical, Reyes, Jorge, and Avila purported to provide at least 38 individual physical therapy services to at least four individual Insureds, and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 9.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to personally perform, or at least directly supervise: (a) two 30-minute initial examinations and one 30-minute follow-up examination that were performed on three GEICO Insureds at New World Medical; and (b) at least 28 additional physical therapy services purportedly provided to four additional GEICO Insureds at separate clinics called Excellent Florida Health Corp. and Hamilton Health, including at least seven hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 18 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on November 17, 2022.

(vi)     On February 21, 2023, New World Medical, Reyes, Jorge, and Avila purported to provide at least 37 individual physical therapy services to at least four individual Insureds, and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 9.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to personally perform, or at least directly supervise: (a) one 30-minute follow-up examination on a GEICO Insured at New World Medical and one 20-minute follow-up examination on one additional GEICO Insured at ACL Health

Center Corp.; and (b) at least 22 <u>additional</u> physical therapy services purportedly provided to three <u>additional</u> GEICO Insureds at ACL Health Center Corp., including at least 5.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 15.5 hours of services that Avila purported to personally perform, or at least directly supervise, at two different locations on February 21, 2023.

(vii)    On March 29, 2023, New World Medical, Reyes, Jorge, and Avila purported to provide at least 36 individual physical therapy services to at least four individual Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least nine hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or at least directly supervise: (a) one 30-minute follow-up examination on 1 <u>additional</u> Insured at ACL Health Center Corp.; and (b) at least 31 <u>additional</u> physical therapy services purportedly provided to four <u>additional</u> GEICO Insureds at ACL Health Center Corp. and Excellent Florida Health Corp., including at least 7.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 17.25 hours of physical therapy services that Avila purported to personally perform, or at least directly supervise, at two different locations on March 29, 2023.

(viii)    On April 4, 2023, New World Medical, Reyes, Jorge, and Avila purported to provide at least 58 individual physical therapy services to at least seven individual Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those putative treatments included at least 14.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or at least directly supervise: (a) one 20-minute follow-up examination on a GEICO Insured at New World Medical; and (b) at least 14 <u>additional</u> physical therapy services purportedly provided to at least two <u>additional</u> GEICO Insureds at Excellent Florida Health Corp. and ACL Health Center Corp., including at least 3.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 18 hours of physical therapy services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on April 4, 2023.

(ix)    On April 17, 2023, New World Medical, Reyes, Jorge, and Avila purported to provide at least 40 individual physical therapy services to at least five individual Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is

more, those treatments included at least 10 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or at least directly supervise: (a) three 30-minute follow-up examinations on 3 individual GEICO Insureds at New World Medical, one 30-minute initial examination and one 45-minute initial examination on two additional GEICO Insureds at a clinic called Ocean Medical N Rehab Inc. and ACL Health Center Corp.; and (b) at least 36 additional physical therapy services purportedly provided to at least five additional GEICO Insureds at clinics called Sunrise Rehab Center, Ocean Medical N Rehab Inc., ACL Health Center Corp., and Excellent Florida Health Corp., including at least nine hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 21.75 hours of physical therapy services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on April 17, 2023.

(x)     On August 15, 2023, New World Medical, Reyes, Jorge, and Avila purported to provide at least 15 individual physical therapy services to at least two individual Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those treatments included at least 3.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or at least directly supervise: (a) one 30-minute follow-up examination on one additional GEICO Insured at Ocean Medical N Rehab Center; and (b) at least 67 additional physical therapy services purportedly provided to at least eight additional GEICO Insureds at ACL Health Center Corp., Sunrise Rehab Center, and Ocean Medical N. Rehab Inc., including at least 16.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 21 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on August 15, 2023.

(xi)    On November 7, 2023, New World Medical, Reyes, Jorge, and Avila purported to provide at least 33 individual physical therapy services to at least four individual Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those treatments included at least 8.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or at least directly supervise: (a) one 20-minute follow-up examination on an individual GEICO Insured at New World Medical and one 30-minute initial examination on 1 additional GEICO Insured at Ocean Medical N Rehab Inc.; and (b) at least 62 additional physical therapy services purportedly provided to at least nine additional GEICO Insureds at Sunrise Rehab Center, New Life Medical Rehab, Medica Center of Health, and Ocean Medical N Rehab Inc., including at

least 15.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 24.5 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on November 7, 2023.

(xii)   On November 30, 2023, New World Medical, Reyes, Jorge, and Avila purported to provide at least 21 individual physical therapy services to at least three individual Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those treatments included at least 5.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or at least directly supervise: (a) four 30-minute initial examinations on two <u>additional</u> GEICO Insureds at Ocean Medical N Rehab Inc.; and (b) at least 55 <u>additional</u> physical therapy services purportedly provided to at least five <u>additional</u> GEICO Insureds at ACL Health Center Corp., Sunrise Rehab Center, and Ocean Medical N Rehab, Inc, including at least 13.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 21 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on November 30, 2023.

(xiii)  On December 5, 2023, New World Medical, Reyes, Jorge, and Avila purported to provide at least 27 individual physical therapy services to at least four individual Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those treatments included at least 6.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or at least directly supervise: (a) three 30-minute follow-up examinations on three GEICO Insureds at New World Medical; and (b) at least 54 <u>additional</u> physical therapy services purportedly provided to at least six <u>additional</u> GEICO Insureds at ACL Health Center Corp., Sunrise Rehab Center, and Ocean Medial N Rehab, Inc., including at least 13.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 21.25 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on December 5, 2023.

(xiv)   On February 15, 2024, New World Medical, Reyes, Jorge, and Avila purported to provide at least 43 individual physical therapy services to at least five individual GEICO Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those treatments included at least 10.75 hours of physical therapy services that required direct, one-to-one patient contact between the treating

provider and the Insureds throughout the services. That same day. Avila also purported to perform, or least directly supervise: (a) four 20-minute follow-up examinations and one 30-minute initial examination on five individual Insureds at New World Medical and one 30-minute initial examination on 1 <u>additional</u> GEICO Insured at Sunrise Rehab Center; and (b) at least 57 <u>additional</u> physical therapy services purportedly provided to six <u>additional</u> GEICO Insureds at Ocean Medical N Rehab Inc. and Sunrise Rehab Center, including at least 14.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 27.25 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on February 15, 2024.

(xv)    On March 14, 2024, New World Medical, Reyes, Jorge, and Avila purported to provide at least 21 individual physical therapy services to at least three individual GEICO Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those treatments included at least 5.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or directly supervise: (a) two 20-minute follow-up examinations on two individual GEICO Insureds at New World Medical, and four 20-minute follow-up examinations on one <u>additional</u> GEICO Insured at Ocean Medical N Rehab Inc.; and (b) at least 62 <u>additional</u> physical therapy services purported provided to at least five <u>additional</u> GEICO Insureds at Ocean Medical N Rehab Inc., Sunrise Rehab Center, and a clinic called Medica Center of Health, including at least 15.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 22.75 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on March 14, 2024.

(xvi)   On May 7, 2024, New World Medical, Reyes, Jorge, and Avila purported to provide at least 21 individual physical therapy services to at least three individual GEICO Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those treatments included at least 5.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or directly supervise: (a) five 30-minute initial examinations on five <u>additional</u> GEICO Insureds at Ocean Medical N Rehab Inc., and two 20-minute follow-up examinations and 1 thirty-minute follow-up examinations on 3 <u>additional</u> GEICO Insureds at Ocean Medical N Rehab Inc. and Sunrise Rehab Center: and (b) at least 94 <u>additional</u> physical therapy services purportedly provided to at least 13 <u>additional</u> GEICO Insureds at Ocean Medical N Rehab Inc. and Sunrise Rehab Center, including at least 23.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds

throughout the services. In all, GEICO received billing for at least 32.25 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on May 7, 2024.

(xvii)   On May 17, 2024, New World Medical, Reyes, Jorge, and Avila purported to provide at least 14 individual physical therapy services to at least two individual GEICO Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those treatments included at least 3.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or directly supervise: (a) one 30-minute initial examination and two 20-minute follow-up examinations on 3 additional GEICO Insureds at Ocean Medical N Rehab; and (b) at least 77 additional physical therapy services purportedly provided to at least 11 additional GEICO Insureds at Ocean Medical N Rehab Inc. and Sunrise Rehab Center, including at least 19.25 hours of direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 22.75 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on May 17, 2024.

(xviii)   On May 28, 2024, New World Medical, Reyes, Jorge, and Avila purported to provide at least 54 individual physical therapy services to at least six individual GEICO Insureds and falsely contended in the resulting bills to GEICO that Avila personally performed or at least directly supervised every one of those treatments. What is more, those treatments included at least 13.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or directly supervise: (a) three 30-minute initial examinations on 3 Insureds at New World Medical; and (b) at least 64 additional physical therapy services purportedly provided to at least 12 additional GEICO Insureds at Ocean Medical N Rehab, New Life Medical Rehab, Sunrise Rehab Center, ACL Health Center Corp., and Medica Center of Health, including at least 16 hours of direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 31 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on May 28, 2024.

(xix)   On June 2, 2024, New World Medical, Reyes, Jorge, and Avila purported to provide at least 21 individual physical therapy services to at least three individual GEICO Insureds, and falsely contended in the resulting bills to GEICO that Avila personally performed, or at least directly supervised every one of those treatments. What is more, those treatments included at least 5.25 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or directly supervise: (a) one 30-minute follow-up

22

examination on one GEICO Insured at New World Medical, three 20-minute follow-up examinations on two <u>additional</u> GEICO Insureds at New Life Medical Rehab, and two 30-minute initial examinations on two <u>additional</u> GEICO Insureds at Ocean Medical N Rehab Inc.; and (b) at least 87 <u>additional</u> physical therapy services purportedly provided to at least 13 <u>additional</u> GEICO Insureds at Ocean Medical N Rehab Inc., New Life Medical Rehab, ACL Health Center Corp., Sunrise Rehab Corp., and Medica Center of Health, including at least 21.75 hours of direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 29.5 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on June 2, 2024.

(xx)   On June 18, 2024, New World Medical, Reyes, Jorge, and Avila purported to provide at least 14 individual physical therapy services to at least two individual GEICO Insureds, and falsely contended in the resulting bills to GEICO that Avila personally performed, or at least directly supervised every one of those treatments. What is more, those treatments included at least 3.5 hours of physical therapy services that required direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. That same day, Avila also purported to perform, or directly supervise: (a) one 30-minute initial examination on one GEICO Insured at New World Medical, and one 20-minute follow-up examination on one <u>additional</u> GEICO Insured at ACL Health Center Corp.; and (b) at least 55 <u>additional</u> physical therapy services purportedly provided to at least seven <u>additional</u> GEICO Insureds at Ocean Medical N Rehab Inc., New Life Medical Rehab, ACL Health Center Corp., and Sunrise Rehab Corp., , including at least 13.75 hours of direct, one-to-one patient contact between the treating provider and the Insureds throughout the services. In all, GEICO received billing for at least 18 hours of services that Avila purported to personally perform, or at least directly supervise, at multiple different locations on June 18, 2024.

75.   These are only representative examples. In the claims for physical therapy services that are identified in Exhibit "1", the New World Defendants routinely falsely represented that Avila had performed – or at least directly supervised – an improbable or impossible number of physical therapy services on individual dates, considering the amounts of services she simultaneously was purporting to perform or directly supervise at the other Clinic Defendants and other health care clinics.

76.     It is impossible that Avila – who was simultaneously was purporting to perform or directly supervise at other health care clinics – routinely performed or directly supervised such a high volume of services, typically at multiple locations, on individual dates.

77.     Furthermore, upon information and belief, the fraudulent billing for physical therapy services that Reyes, Heidemann, and Jorge submitted through New World Medical to GEICO constituted only a fraction of the total fraudulent billing for physical therapy services that Reyes, Heidemann, and Jorge submitted through New World Medical to all of the automobile insurers in the Florida automobile insurance market.

78.     GEICO is only one of the automobile insurance companies doing business in the Florida automobile insurance market.

79.     It is extremely improbable, to the point of impossibility, that New World Medical, Reyes, Heidemann, and Jorge only submitted fraudulent billing to GEICO, and that New World Medical, Reyes, Heidemann, and Jorge did not simultaneously bill other automobile insurers.

80.     Thus, upon information and belief, the improbable or impossible number of physical therapy services that Avila purported to directly supervise or provide to GEICO's Insureds New World Medical on individual dates of services, including the dates of service identified above, constituted only a fraction of the total number of physical therapy services that Avila purported to directly supervise or provide at New World Medical, including to individuals insured by companies other than GEICO, on those same dates of service.

81.     In fact, since at least January 1, 2021, New World Medical did not actually provide any legitimate physical therapy services to GEICO Insureds.

82.     Rather: (i) all of the putative "physical therapy" services that New World Medical purported to provide to Insureds since January 1, 2021 were performed, to the extent that they

were performed at all, by massage therapists or unlicensed/unsupervised individuals associated with New World Medical; and (ii) none of the putative "physical therapy" services that were billed through New World Medical to GEICO since January 1, 2021 actually constituted physical therapy, because the massage therapists or unlicensed individuals associated with New World Medical are not and never have been licensed as physical therapists, and did not perform the pertinent services under the legitimate supervision of any licensed physical therapist, physician, or other health care provider.

83.     In the claims for "physical therapy" services identified in Exhibit "1", the New World Medical Defendants routinely fraudulently misrepresented that the physical therapy services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the purported physical therapy services were performed – to the extent that they were performed at all – by massage therapists and unsupervised unlicensed individuals, in contravention of Florida law;

(ii)    New World Medical could not lawfully recover PIP Benefits for the purported physical therapy services, because they were performed by massage therapist and unsupervised unlicensed individuals; and

(iii)   the New World Medical Defendants systematically fraudulently misrepresented and concealed the identities of the individuals who either personally performed or directly supervised the putative physical therapy services.

84.     In this context, Heidemann and Jorge – who purported to be the medical directors at New World Medical – did not, and could not have, legitimately systematically reviewed New World Medical's billing to ensure that it was neither fraudulent nor unlawful.

85.     Had Heidemann and Jorge actually systematically reviewed New World Medical's billing, they would have noted – among other things – that physical therapy services at New World

25

Medical were unlawfully performed by massage therapists and unsupervised unlicensed individuals, and unlawfully billed to GEICO.

**C.     Defendants' Unlawful General Business Practice of Failing to Make a Good Faith Effort to Collect Co-Payments or Deductibles from Their Patients**

86.     Furthermore, Defendants unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-payments or deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

87.     In keeping with this fact, in virtually all of the thousands of bills (i.e., the HCFA-1500 forms) submitted through New World Medical and Artang to GEICO for Defendants' Fraudulent Services, Defendants represented that they did not collect any money, whether it be a copayment or deductible, from the patient.

88.     In the claims identified in Exhibit "1", Defendants routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in the fact they were neither lawfully provided nor reimbursable because the Defendants engaged in the unlawful general business practice of waiving, or failing to make a good-faith effort to collect, co-payments and deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

89.     In this context, the Clinic Medical Director Defendants – who purported to be the medical directors at the respective Clinic Defendants – did not, and could not have, legitimately systematically reviewed the Clinic Defendants' billing to ensure that it was neither fraudulent nor unlawful.

90.     Had Heidemann and Jorge actually supervised the business activities of the New World Medical, they would have noted – among other things – that Defendants unlawfully engaged in the general business practice of waiving, or failing to make a good-faith effort to collect, co-

payments or deductibles from their patients in violation of the False and Fraudulent Insurance Claims Statute.

**D.      Defendants' Fraudulent Treatment and Billing Protocols**

91.     In the claims identified in Exhibits "1" and "2", almost none of the Insureds whom Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced.

92.     Even so, in the claims identified in Exhibits "1" and "2", Defendants purported to subject virtually every Insured to a medically unnecessary course of "treatment" that was provided pursuant to a pre-determined, fraudulent protocol designed to maximize the billing that they could submit to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

93.     Defendants purported to provide their pre-determined fraudulent treatment to Insureds in the claims identified in Exhibits "1" and "2" without regard for the Insureds' individual symptoms or presentation, or – in most cases – the total absence of any actual continuing medical problems arising from any actual automobile accidents.

94.     Each step in Defendants' fraudulent treatment protocols was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit Defendants to generate and falsely justify the maximum amount of fraudulent PIP Billing for each Insured.

95.     No legitimate physician, physical therapist, clinic, or other health care provider would permit the fraudulent treatment and billing protocols described below to proceed under his, her, or its auspices.

96.     Defendants permitted the fraudulent treatment and billing protocols below to proceed under their auspices because they sought to continue profiting from their fraudulent scheme.

**1.      The Fraudulent Charges for Initial Examinations at New World Medical**

97.     As an initial step in Defendants' fraudulent treatment and billing protocol, virtually every Insured in the claims identified in Exhibit "1" purportedly received an initial examination at New World Medical, with Avila purporting to personally perform or directly supervise virtually all of the initial examinations.

98.     As set forth in Exhibit "1", the New World Medical Defendants then billed the initial examinations to GEICO, or caused them to billed to GEICO, under CPT code 99203, resulting in charges of $300.00 for each initial examination that they purported to provide.

99.     Pursuant to the American Medical Association's CPT Assistant, which governs the use of CPT codes, at all relevant times the use of CPT code 99203 to bill for an initial patient examination represented – among other things – that: (i) the patient presented with problems of moderate severity; (ii) the physician or health care practitioner who performed the examination spent at least 30 minutes time performing the exmaination; and (iii) the physician or health care practitioner who performed the examination engaged in legitimate "low complexity" medical decision-making in connection with the examination.

100.     In the claims for initial examinations identified in Exhibit "1", the charges for the initial examinations were fraudulent in that they misrepresented New World Medical's eligibility to collect PIP Benefits in the first instance.

101.     In fact, and as set forth herein, New World Medical never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing and operating requirements

set forth in the Clinic Act, the False and Fraudulent Insurance Claims Statute, as well as the Patient Brokering Act and Anti-Kickback Statute.

102.    As set forth below, the charges for the initial examinations identified in Exhibit "1" also were fraudulent in that they misrepresented the nature, extent, and results of the initial examinations.

**a.    Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

103.    To the extent that the Insureds in the claims identified in Exhibit "1" had any presenting problems at all as the result of their relatively minor automobile accidents, the problems virtually always were low or minimal severity soft tissue injuries such as sprains and strains.

104.    For instance, and in keeping with the fact that the Insureds in the claims identified in Exhibit 1 either had no presenting problems at all as a result of their minor automobile accidents, or else problems of low or minimal severity, in many of the claims identified in Exhibit "1" the contemporaneous police reports indicated that the underlying accidents involved low-impact collisions, that the Insureds' vehicles were drivable following the accidents, and that no one was seriously injured in the underlying accidents, or injured at all.

105.    What is more, in most of the claims identified in Exhibit "1" the Insureds did not seek treatment at any hospital as the result of their accidents.

106.    To the limited extent that the Insureds in the claims identified in Exhibit "1" did seek treatment at a hospital following their accidents, they almost always were briefly observed on an outpatient basis, and then discharged with nothing more serious than a minor soft tissue injury diagnosis.

107.    Even so, in the claims for initial examinations identified in Exhibit "1", the New World Medical Defendants routinely billed for their putative examinations using CPT Code 99203, and thereby falsely represented that the Insureds presented with problems of moderate severity.

108.    For example:

(i)     On July 20, 2021, an Insured named LR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LR's vehicle was drivable following the accident. The police further indicated that LR was not injured and did not complain of any pain at the scene. In keeping with the fact that LR was not seriously injured, LR did not visit any hospital emergency room following the accident. To the extent that LR experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of LR on July 22, 2021, New World Medical, Reyes, Heidemann, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ii)    On September 24, 2021, an Insured named AA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AA's vehicle was drivable following the accident. The police further indicated that AA was not injured and did not complain of any pain at the scene. In keeping with the fact that AA was not seriously injured, AA did not visit any hospital emergency room following the accident. To the extent that AA experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AA on September 27, 2021, New World Medical, Reyes, Heidemann, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iii)   On December 7, 2021, an Insured named YP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that YP's vehicle was drivable following the accident. The police further indicated that YP was not injured and did not complain of any pain at the scene. In keeping with the fact that YP was not seriously injured, YP did not visit any hospital emergency room following the accident. To the extent that YP experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of YP on December 14, 2021, New World Medical, Reyes, Heidemann, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(iv)    On December 17, 2021, an Insured named MJ was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that MJ's vehicle was drivable following the accident. The police further indicated that MJ was not injured and did not complain of any pain at the scene. In keeping with the fact that MJ was not seriously injured, MJ did not visit any hospital emergency room following the accident. To the extent that MJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of MJ on December 30, 2021, New World Medical, Reyes, Heidemann, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(v)    On April 21, 2022, an Insured named DR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that DR's vehicle was drivable following the accident. The police further indicated that that DR was not injured and did not complain of any pain at the scene. In keeping with the fact that DR was not seriously injured, DR did not visit any hospital emergency room following the accident. To the extent that DR experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of DR on May 2, 2022, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(vi)    On October 11, 2022, an Insured named LR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LR's vehicle was drivable following the accident. The police further indicated that LR was not injured and did not complain of any pain at the scene. In keeping with the fact that LR was not seriously injured, LR did not visit any hospital emergency room following the accident. To the extent that LR experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of LR on October 17, 2022, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(vii)    On April 26, 2023, an Insured named GB was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that GB's vehicle was drivable following the accident. The police further indicated that GB was not injured and did not complain of any pain at the scene. In keeping with the fact that GB was not seriously injured, GB did not visit any hospital emergency room following the accident. To the extent that GB experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of GB

on May 2, 2023, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(viii)   On March 28, 2023, an Insured named RE was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that RE's vehicle was drivable following the accident. The police further indicated that RE was not injured and did not complain of any pain at the scene. In keeping with the fact that RE was not seriously injured, RE did not visit any hospital emergency room following the accident. To the extent that RE experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of RE on March 30, 2023, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(ix)   On June 27, 2023, an Insured named HR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that HR's vehicle was drivable following the accident. The police further indicated that HR was not injured and did not complain of any pain at the scene. In keeping with the fact that HR was not seriously injured, HR did not visit any hospital emergency room following the accident. To the extent that HR experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of HR on June 30, 2023, New World Medical, Reyes, Jorge, and Valdes billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(x)   On July 1, 2023, an Insured named HM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that HM's vehicle was drivable following the accident. The police further indicated that HM was not injured and did not complain of any pain at the scene. In keeping with the fact that HM was not seriously injured, HM did not visit any hospital emergency room following the accident. To the extent that HM experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of HM on July 6, 2023, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(xi)   On July 10, 2023, an Insured named SM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that SM's vehicle was drivable following the accident. The police further indicated that SM was not injured and did not complain of any pain at the scene. In keeping with the fact that SM was not seriously injured, SM did not visit any hospital emergency room following the accident. To the extent that

SM experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of SM on July 11, 2023, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(xii)   On October 30, 2023, an Insured named MM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that MM's vehicle was drivable following the accident. The police further indicated that MM was not injured and did not complain of any pain at the scene. In keeping with the fact that MM was not seriously injured, MM did not visit any hospital emergency room following the accident. To the extent that MM experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of MM on October 30, 2023, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(xiii)  On November 1, 2023, an Insured named AC was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AC's vehicle was drivable following the accident. The police further indicated that AC was not injured and did not complain of any pain at the scene. In keeping with the fact that AC was not seriously injured, AC did not visit any hospital emergency room following the accident. To the extent that AC experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of AC on November 1, 2023, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(xiv)   On December 19, 2023, an Insured named WM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that WM's vehicle was drivable following the accident. The police further indicated that WM was not injured and did not complain of any pain at the scene. In keeping with the fact that WM was not seriously injured, WM did not visit any hospital emergency room following the accident. To the extent that WM experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of WM on December 19, 2023, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

(xv)   On June 15, 2024, an Insured named JA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JA's vehicle was drivable following the accident. The police further indicated that JA was not injured and did not complain of any pain at the scene. In keeping with the fact that JA was not seriously injured, JA did not visit any hospital emergency room following the accident. To the extent that JA experienced any health problems at all as a result of the accident, they were of low or minimal severity. Even so, following a purported initial examination of JA on June 17, 2024, New World Medical, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that the initial examination involved presenting problems of moderate severity.

109.   These are only representative examples. In virtually all of the claims for initial examinations identified in Exhibit "1", the New World Medical Defendants falsely represented that the Insureds presented with problems of moderate severity, when in fact the Insureds' problems were of low or minimal severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

110.   In the claims for initial examinations identified in Exhibit "1", the New World Medical Defendants routinely falsely represented that the Insureds presented with problems of moderate severity in order to create a false basis for their charges for the examinations under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations involving presenting problems of low severity, minimal severity, or no severity.

111.   In the claims for initial examinations identified in Exhibit "1", the New World Medical Defendants also routinely falsely represented that the Insureds presented with problems of moderate severity in order to create a false basis for the laundry list of other Fraudulent Services that the New World Medical Defendants purported to provide to the Insureds, including medically unnecessary follow-up examinations and physical therapy services.

**b.      Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

112.    What is more, in every claim identified in Exhibit "1" for initial examinations under CPT code 99203, the New World Medical Defendants misrepresented and exaggerated the amount of face-to-face time that the examining provider – purportedly Avila – spent with the Insureds or the Insureds' families during the putative initial examinations.

113.    Though the New World Medical Defendants billed for their purported initial examinations using CPT code 99203, and thereby represented that Avila spent at least 30 minutes of time performing the examinations, in fact neither Avila, nor any other practitioner, spent even 15 minutes of time when conducting the examinations, to the extent that the examinations actually were conducted at all.

114.    In keeping with the fact that the initial examinations in the claims identified in Exhibit "1" did not take more than 15 minutes to perform, Avila used template forms in purporting to conduct the examinations.

115.    All that was required to complete the template forms was a brief patient interview and a perfunctory physical examination physical examination of the Insureds, using a limited range of examination parameters.

116.    These interviews and examinations did not require Avila or any other practitioner associated with New World Medical to spend more than 15 minutes of time on the examinations.

117.    In the claims for initial examinations that are identified in Exhibit "1", the New World Defendants routinely misrepresented the amount of time that was spent in conducting the initial examinations because lengthier examinations that are billable under CPT codes 99203 are reimbursable at higher rates than examinations that take less time to perform.

**c.      Misrepresentations Regarding the Extent of Medical Decision-Making**

118.    Pursuant to the CPT Assistant, the complexity of medical decision-making is measured by: (i) the number of diagnoses and/or the number of management options to be considered; (ii) the amount and/or complexity of medical records, diagnostic tests, and other information that must be retrieved, reviewed, and analyzed; and (iii) the risk of significant complications, morbidity, mortality, as well as co-morbidities associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options.

119.    As set forth above, and in Exhibit "1", all of the initial examinations that the New World Medical Defendants billed through New World Medical to GEICO were billed under CPT code 99203, which represented that the examining physician or practitioner – typically Avila – engaged in some genuine, low-complexity medical decision-making during the initial examinations.

120.    In actuality, however, the purported initial examinations did not involve any legitimate medical decision-making at all.

121.    First, in the claims for initial examinations identified in Exhibit "1", the initial examinations did not involve the retrieval, review, or analysis of a significant amount of medical records, diagnostic tests, or other information.

122.    When the Insureds in the claims identified in Exhibit "1" presented to New World Medical for "treatment", they did not arrive with any significant amount of medical records.

123.    Second, in the claims for initial examinations identified in Exhibit "1", there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft-tissue injury complaints, to the extent that they actually presented with any ongoing complaints arising from automobile accidents at all.

124. Nor, by extension, was there any risk of significant complications, morbidity, or mortality from the diagnostic procedures or treatment options provided at New World Medical, to the extent that New World Medical provided any such diagnostic procedures or treatment options in the first instance.

125. In virtually all of the claims identified in Exhibit "1", any diagnostic procedures and "treatments" that the New World Medical Defendants actually provided were limited to a series of medically unnecessary follow-up examinations, physical therapy treatments, and pain management treatments, none of which was health- or life-threatening if properly administered.

126. Third, in the claims for initial examinations identified in Exhibit "1", neither Avila nor any other examining practitioner considered any significant number of diagnoses or treatment options for Insureds during the initial examinations.

127. Rather, to the extent that the initial examinations were conducted in the first instance, the New World Medical Defendants provided a nearly identical, pre-determined set of false, objectively unverifiable soft tissue injury "diagnoses" for the Insureds, and recommended a substantially similar course of medically unwarranted treatment for the Insureds.

128. Specifically, in the claims identified in Exhibit "1", during the initial examinations the Insureds routinely did not report any significant continuing medical problems that legitimately could be traced to an underlying automobile accident.

129. Even so, the New World Medical Defendants prepared initial examination reports in which they provided false, boilerplate, objectively unverifiable soft tissue injury "diagnoses" to virtually every Insured.

130.    Then, based upon these false "diagnoses", the New World Medical Defendants caused virtually every Insured to receive significant and medically unnecessary physical therapy treatment.

131.    For example:

(i)     On September 24, 2021, an Insured named AA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AA's vehicle was drivable following the accident. The police further indicated that AA was not injured and did not complain of any pain at the scene. In keeping with the fact that AA was not seriously injured, AA did not visit any hospital emergency room following the accident. To the extent that AA experienced any health problems at all as a result of the accident, they were of low or minimal severity. On September 27, 2021, Avila purported to conduct an initial examination of AA at New World Medical. To the extent that Avila performed the examination in the first instance, Avila did not retrieve, review, or analyze any significant amount of medical records, diagnostic tests, or other information in connection with the examination. Moreover, Avila did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Avila provided AA with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither AA's presenting problems, nor the treatment plan provided to AA by Avila, Heidemann, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, AA did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Heidemann, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to RE. Even so, Heidemann, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ii)    On December 7, 2021, an Insured named YP was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that YP's vehicle was drivable following the accident. The police further indicated that YP was not injured and did not complain of any pain at the scene. In keeping with the fact that YP was not seriously injured, YP did not visit any hospital emergency room following the accident. To the extent that YP experienced any health problems at all as a result of the accident, they were of low or minimal severity. On December 14, 2021, Avila purported to conduct an initial examination of YP at New World Medical. To the extent that Avila performed the examination in the first instance, Avila did not retrieve, review, or analyze any significant number of diagnoses or management options in connection with the examination. Moreover, Avila did not consider any significant number of

diagnoses or management options in connection with the examination. Instead, Avila provided YP with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither YP's presenting problems, nor the treatment plan provided to YP by Avila, Heidemann, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, YP did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Heidemann, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to YP. Even so, Heidemann, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iii)   On December 17, 2021, an Insured named MJ was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that MJ's vehicle was drivable following the accident. The police further indicated that MJ was not injured and did not complain of any pain at the scene. In keeping with the fact that MJ was not seriously injured, MJ did not visit any hospital emergency room following the accident. To the extent that MJ experienced any health problems at all as a result of the accident, they were of low or minimal severity. On December 30, 2021, Avila purported to conduct an initial examination of MJ at New World Medical. To the extent that Avila performed the examination in the first instance, Avila did not retrieve, review, or analyze any significant number of diagnoses or management options in connection with the examination. Moreover, Avila did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Avila provided MJ with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither MJ's presenting problems, nor the treatment plan provided to MJ by Avila, Heidemann, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, MJ did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Heidemann, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to MJ. Even so, Heidemann, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

(iv)   On April 21, 2022, an Insured named DR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that DR's vehicle was drivable following the accident. The police further indicated that that DR was not injured and did not complain of any pain at the scene. In keeping with the fact that DR was not seriously injured, DR did not visit any hospital emergency room following the accident. To the extent that DR experienced any health problems at all as a result of the accident, they were of low or minimal severity. On May 2, 2022, Avila purported to conduct an initial

examination of DR at New World Medical. To the extent that Avila performed the examination in the first instance, Avila did not retrieve, review, or analyze any significant number of diagnoses or management options in connection with the examination. Moreover, Avila did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Avila provided DR with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither DR's presenting problems, nor the treatment plan provided to DR by Avila, Jorge, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, DR did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Jorge, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to DR. Even so, Jorge, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

(v)    On October 11, 2022, an Insured named LR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LR's vehicle was drivable following the accident. The police further indicated that LR was not injured and did not complain of any pain at the scene. In keeping with the fact that LR was not seriously injured, LR did not visit any hospital emergency room following the accident. To the extent that LR experienced any health problems at all as a result of the accident, they were of low or minimal severity. On October 17, 2022, Avila purported to conduct an initial examination of LR at New World Medical. To the extent that Avila performed the examination in the first instance, Avila did not retrieve, review, or analyze any significant number of diagnoses or management options in connection with the examination. Moreover, Avila did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Avila provided LR with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither LR's presenting problems, nor the treatment plan provided to LR by Avila, Jorge, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, LR did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Jorge, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to LR. Even so, Jorge, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

(vi)   On April 26, 2023, an Insured named GB was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that GB's vehicle was drivable following the accident. The police further indicated that GB was not injured and did not complain of any

pain at the scene. In keeping with the fact that GB was not seriously injured, GB did not visit any hospital emergency room following the accident. To the extent that GB experienced any health problems at all as a result of the accident, they were of low or minimal severity. On May 2, 2023, Avila purported to conduct an initial examination of GB at New World Medical. To the extent that Avila performed the examination in first instance, Avila did not retrieve, review, or analyze any significant number of diagnoses or management options in connection with the examination. Moreover, Avila did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Avila provided GB with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither GB's presenting problems, nor the treatment plan provided to GB by Avila, Jorge, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, GB did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Jorge, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to GB. Even so, Jorge, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

(vii)    On June 27, 2023, an Insured named HR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that HR's vehicle was drivable following the accident. The police further indicated that HR was not injured and did not complain of any pain at the scene. In keeping with the fact that HR was not seriously injured, HR did not visit any hospital emergency room following the accident. To the extent that HR experienced any health problems at all as a result of the accident, they were of low or minimal severity. On June 30, 2023, Avila purported to conduct an initial examination of HR at New World Medical. To the extent that Avila performed the examination in first instance, Avila did not retrieve, review, or analyze any significant number of diagnoses or management options in connection with the examination. Moreover, Avila did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Avila provided HR with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither HR's presenting problems, nor the treatment plan provided to HR by Avila, Jorge, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, HR did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Jorge, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to HR. Even so, Jorge, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

41

(viii)   On October 30, 2023, an Insured named MM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that MM's vehicle was drivable following the accident. The police further indicated that MM was not injured and did not complain of any pain at the scene. In keeping with the fact that MM was not seriously injured, MM did not visit any hospital emergency room following the accident. To the extent that MM experienced any health problems at all as a result of the accident, they were of low or minimal severity. On October 30, 2023, Avila purported to conduct an initial examination of MM at New World Medical. To the extent that Avila performed the examination in first instance, Avila did not retrieve, review, or analyze any significant number of diagnoses or management options in connection with the examination. Moreover, Avila did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Avila provided MM with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither MM's presenting problems, nor the treatment plan provided to MM by Avila, Jorge, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, MM did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Jorge, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to MM. Even so, Jorge, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

(ix)   On December 19, 2023, an Insured named WM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that WM's vehicle was drivable following the accident. The police further indicated that WM was not injured and did not complain of any pain at the scene. In keeping with the fact that WM was not seriously injured, WM did not visit any hospital emergency room following the accident. To the extent that WM experienced any health problems at all as a result of the accident, they were of low or minimal severity. On December 19, 2023, Avila purported to conduct an initial examination of WM at New World Medical. To the extent that Avila performed the examination in first instance, Avila did not retrieve, review, or analyze any significant number of diagnoses or management options in connection with the examination. Moreover, Avila did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Avila provided WM with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither WM's presenting problems, nor the treatment plan provided to WM by Avila, Jorge, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, WM did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Jorge, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to WM. Even so,

Jorge, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

(x)     On June 15, 2024, an Insured named JA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that JA's vehicle was drivable following the accident. The police further indicated that JA was not injured and did not complain of any pain at the scene. In keeping with the fact that JA was not seriously injured, JA did not visit any hospital emergency room following the accident. To the extent that JA experienced any health problems at all as a result of the accident, they were of low or minimal severity. On June 17, 2024, Avila purported to conduct an initial examination of JA at New World Medical. To the extent that Avila performed the examination in first instance, Avila did not retrieve, review, or analyze any significant number of diagnoses or management options in connection with the examination. Moreover, Avila did not consider any significant number of diagnoses or management options in connection with the examination. Instead, Avila provided JA with the same, false list of soft tissue injury "diagnoses" that she provided to virtually every other Insured. Furthermore, neither JA's presenting problems, nor the treatment plan provided to JA by Avila, Jorge, Reyes, and New World Medical presented any risk of significant complications, morbidity, or mortality. To the contrary, JA did not need any significant treatment at all as a result of the accident, and the treatment provided by Avila, Jorge, Reyes, and New World Medical consisted of medically unnecessary physical therapy services, which did not pose the least bit of risk to JA. Even so, Jorge, Reyes, Avila, and New World Medical billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that Avila engaged in some legitimate, low complexity medical decision-making during the purported examination.

132.     These are only representative examples. In the claims identified in Exhibit "1", the New World Medical Defendants routinely falsely represented that the purported examinations involved legitimate low-complexity decision-making, when in fact they did not involve any legitimate medical decision-making.

133.     In a legitimate clinical setting, when a patient presents with a soft tissue injury such as a sprain or strain arising from an automobile accident, the initial standard of care is conservative treatment comprise of rest, ice, compression, and – if applicable – elevation of the affected body part.

134.    It is generally inappropriate to begin administering physical therapy to a patient with a soft tissue injury in the immediate aftermath of the injury, before the patient has first tried a more conservative course of rest, ice, compression, and – if applicable – elevation of the affected body part.

135.    Even so, in the claims identified in Exhibit "1", the New World Medical Defendants routinely directed Insureds to immediately begin a course of medically unnecessary physical therapy often within days of their accidents, before the Insureds had first tried a more conservative course of treatment.

136.    The New World Defendants routinely directed Insureds to immediately begin a course of physical therapy often within days of their accidents, or even on the same day of their accidents, because their putative initial examinations involved no legitimate medical decision-making whatsoever, and had pre-determined outcomes.

137.    In keeping with the fact that these putative "diagnoses" were pre-determined and falsified, the New World Medical Defendants frequently provided examinations – usually performed by Avila – on or about the same date, to two or more Insureds who had been involved in the same underlying accident, and at the conclusion of the examinations, the New World Medical Defendants issued substantially identical, false "diagnoses", and recommended substantially identical courses of medically unnecessary "treatment" for the Insureds.

138.    For example:

(i)     On March 23, 2022, two Insureds – FD and RD – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at New World Medical for initial examinations by Avila on the exact same date, March 24, 2022. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided FD and RD with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them, despite the fact that they were differently situated and in any case did not require the services.

44

**(ii)**      On April 18, 2022, two Insureds – LM and PM – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented New World Medical for initial examinations by Avila <u>on the exact same date</u>, April 26, 2022. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided LM and PM with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them, despite the fact that they were differently situated and in any case did not require the services.

(iii)      On May 16, 2022, two Insureds – LC and LC – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at New World Medical for initial examinations by Avila <u>on the exact same date</u>, May 24, 2022. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided LC and LC with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them, despite the fact that they were differently situated and in any case did not require the services.

(iv)      On July 25, 2022, two Insureds – JJ and JC – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at New World Medical for initial examinations by Avila <u>on the exact same date</u>, July 26, 2022. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided JJ and JC with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them, despite the fact that they were differently situated and in any case did not require the services.

(v)      On November 15, 2022, two Insureds – GS and DS – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at New World Medical for initial examinations by Avila <u>on the exact same date</u>, November 17, 2022. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided GS and DS with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them, despite the fact that they were differently situated and in any case did not require the services.

(vi)      On November 25, 2022, two Insureds – MR and BL – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at New World Medical for initial examinations by Avila <u>on the exact same date</u>, November 25, 2022. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided MR and BL with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them, despite the fact that they were differently situated and in any case did not require the services.

(vii)     On January 26, 2023, two Insureds – NB and VM – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at New World Medical for initial examinations by Avila on the <u>exact same date</u>, January 26, 2023. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided NB and VM with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them, despite the fact that they were differently situated and in any case did not require the services.

(viii)    On April 17, 2023, two Insureds – MT and AM – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at New World Medical for initial examinations by Avila on the <u>exact same date</u>, April 24, 2023. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided MT and AM with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them, despite the fact that they were differently situated and in any case did not require the services.

(ix)      On January 16, 2024, three Insureds – LC, JC, and JC – were involved in the same automobile accident. Thereafter – incredibly – all three Insureds presented at New World Medical for initial examinations by Avila <u>on the exact same date</u>, January 16, 2024. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided LC, JC, and JC with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to all three of them, despite the fact that they were differently situated and in any case did not require the services.

(x)       On January 22, 2024, two Insureds – JG and MV – were involved in the same automobile accident. Thereafter – incredibly – both Insureds presented at New World Medical for initial examinations by Avila <u>on the exact same date</u>, January 25, 2024. At the conclusion of the purported initial examinations, New World Medical, Reyes, Jorge, and Avila provided JG and MV with substantially similar, false soft tissue injury "diagnoses", and recommended a substantially similar course of medically unnecessary treatment to both of them, despite the fact that they were differently situated and in any case did not require the services.

139.     These are only representative examples. In the claims for initial examinations identified in Exhibit "1", the New World Medical Defendants routinely inserted false "diagnoses" in their initial examination reports in order to create a false impression that the initial examinations required some legitimate medical decision-making.

140.     To the extent that the Insureds in the claims identified in Exhibit "1" ever had any genuine medical problems at all as a result of their minor automobile accidents, the problems virtually always were limited to ordinary sprains or strains of the beck, neck, or extremities.

141.     The diagnosis and treatment of these ordinary sprains and strains did not require any "low complexity" medical decision-making on the part of the New World Medical Defendants, or any other health care practitioners associated with New World Medical.

142.     To the contrary, the initial examinations did not involve any legitimate medical decision-making at all, because the purported "results" of the examinations were pre-determined, falsified, and designed to provide a false justification for the laundry-list of other Fraudulent Services that the New World Medical Defendants purported to provide.

143.     In the claims for initial examinations identified in Exhibit "1", the New World Medical Defendants routinely falsely represented that the initial examinations involved medical decision-making of low complexity in order to provide a false basis to bill for the initial examinations under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations that do not require legitimate, low complexity decision-making.

144.     In the claims for initial examinations identified in Exhibit "1", the New World Medical Defendants routinely fraudulently misrepresented that the examinations were lawfully provided and eligible for PIP reimbursement, when in fact they were neither lawfully provided nor reimbursable because:

    (i)    the putative examinations were illusory, with outcomes that were pre-determined to result in substantially identical, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)     the charges for the putative examinations misrepresented the nature, extent, and results of the examinations; and

(iii)    the New World Medical Defendants never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they operated in violation of Florida law.

**2.     The Fraudulent Charges for Follow-Up Examinations at New World Medical**

145.    In addition to their fraudulent initial examinations, the New World Medical Defendants virtually always purported to subject each of the Insureds in the claims identified in Exhibit "1" to multiple, fraudulent follow-up examinations during the course of their fraudulent treatment and billing protocol.

146.    Avila purported to personally perform a substantial majority of the follow-up examinations in the claims identified in Exhibit "1".

147.    As set forth in Exhibit "1", the New World Medical Defendants then billed many of the purported follow-up examinations under: (i) CPT code 99214, virtually always resulting in a charge of between $230.00 and $380.00 for each putative follow-up examination; or (ii) CPT code 99213, virtually always resulting in a charge of between $150.00 and $250.00 for each putative follow-up examination.

148.    In the claims for follow-up examinations identified in Exhibit "1", the charges for the follow-up examinations were fraudulent in that they misrepresented New World Medical's eligibility to collect PIP Benefits in the first instance.

149.    In fact, and as set forth herein, the New World Medical Defendants never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they operated in violation of Florida law.

150.     As set forth below, the New World Medical Defendants' charges for the follow-up examinations identified in Exhibit "1" also were fraudulent in that they misrepresented the nature, extent, and resulots of the follow-up examinations.

**a.      Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

151.     Pursuant to the CPT Assistant, the use of CPT code 99213 to bill for a follow-up examination typically requires that the patient presented with problems of low to moderate severity.

152.     The CPT Assistant provides various clinical examples of the types of presenting problems that qualify as problems of low to moderate severity, and thereby justify the use of CPT code 99213 to bill for a follow-up patient examination.

153.     For example, the CPT Assistant provides the following clinical examples of presenting problems that might qualify as problems of low to moderate severity, and therefore support the use of CPT code 99213 to bill for a follow-up patient examination:

(i)      Follow-up visit with 55-year-old male for management of hypertension, mild fatigue, on beta blocker/thiazide regimen. (Family Medicine/Internal Medicine)

(ii)     Follow-up office visit for an established patient with stable cirrhosis of the liver. (Gastroenterology)

(iii)    Outpatient visit with 37-year-old male, established patient, who is 3 years post total colectomy for chronic ulcerative colitis, presents for increased irritation at his stoma. (General Surgery)

(iv)     Routine, follow-up office evaluation at a three-month interval for a 77-year-old female with nodular small cleaved-cell lymphoma. (Hematology/Oncology)

(v)      Follow-up visit for a 70-year-old diabetic hypertensive patient with recent change in insulin requirement. (Internal Medicine/Nephrology)

(vi)     Quarterly follow-up office visit for a 45-year-old male, with stable chronic asthma, on steroid and bronchodilator therapy. (Pulmonary Medicine)

(vii)   Office visit with 80-year-old female established patient, for follow-up osteoporosis, status-post compression fractures. (Rheumatology)

154.    Thus, pursuant to the CPT Assistant, the low to moderate severity presenting problems that could support the use of CPT code 99213 to bill for a follow-up patient examination typically are chronic and relatively serious problems.

155.    Pursuant to the CPT Assistant, the use of CPT code 99214 to bill for a follow-up examination typically represents that the patient presented with problems of moderate to high severity.

156.    The CPT Assistant provides various clinical examples of the types of presenting problems that qualify as moderately to highly severe, and thereby justify the use of CPT code 99214 to bill for a follow-up patient examination.

157.    For example, the CPT Assistant provides the following clinical examples of presenting problems that might support the use of CPT code 99214 to bill for a follow-up patient examination:

(i)     Office visit for a 68-year-old male with stable angina, two months post myocardial infarction, who is not tolerating one of his medications. (Cardiology)

(ii)    Office evaluation of 28-year-old patient with regional enteritis, diarrhea and low-grade fever, established patient. (Family Medicine/Internal Medicine)

(iii)   Weekly office visit for 5FU therapy for an ambulatory established patient with metastatic colon cancer and increasing shortness of breath. (Hematology/Oncology)

(iv)    Office visit with 50-year-old female, established patient, diabetic, blood sugar controlled by diet. She now complains of frequency of urination and weight loss, blood sugar of 320 and negative ketones on dipstick. (Internal Medicine)

(v)     Follow-up visit for a 60-year-old male whose post-traumatic seizures have disappeared on medication, and who now raises the question of stopping the medication. (Neurology)

(vi)     Follow-up office visit for a 45-year-old patient with rheumatoid arthritis on gold, methotrexate, or immunosuppressive therapy. (Rheumatology)

(vii)    Office evaluation on new onset RLQ pain in a 32-year-old woman, established patient. (Urology/General Surgery/Internal Medicine/Family Medicine)

(viii)   Office visit with 63-year-old female, established patient, with familial polyposis, after a previous colectomy and sphincter sparing procedure, now with tenesmus, mucus, and increased stool frequency. (Colon and Rectal Surgery)

158.    Thus, pursuant to the CPT Assistant, the moderate to high severity presenting problems that could support the use of CPT code 99214 to bill for a follow-up patient examination typically problems that pose a serious threat to the patient's health, or even the patient's life.

159.    However, and as set forth above, to the extent that the Insureds in the claims identified in Exhibit "1" suffered any injuries at all in their minor automobile accidents, the injuries were minor soft tissue injuries such as sprains and strains, which were not severe at all.

160.    These injuries – to the extent that they existed in the first instance – were of low or minimal severity at the outset, and were of minimal severity by the time the Insureds presented for the purported follow-up examinations, typically weeks or even months after the underlying accidents.

161.    Even so, in the claims for follow-up examinations identified in Exhibit "1", the New World Medical Defendants routinely billed for their putative follow-up examinations under CPT codes 99214 and 99213, and thereby falsely represented that the Insureds continued to suffer from presenting problems of either low to moderate severity or moderate to high severity at the time of the purported follow-up examinations.

162.    For example:

(i)      On July 20, 2021, an Insured named LR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LR's vehicle was drivable following the accident. The police further indicated that LR was not injured and did not complain of any

pain at the scene. In keeping with the fact that LR was not seriously injured, LR did not visit any hospital emergency room following the accident. To the extent that LR experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely resolved within a few weeks of the accident. Even so, following a purported follow-up examination of LR on August 12, 2021, Reyes, Heidemann, and Avila billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that LR presented with problems of low to moderate severity at the follow-up examination.

(ii)     On September 24, 2021, an Insured named AA was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that AA's vehicle was drivable following the accident. The police further indicated that AA was not injured and did not complain of any pain at the scene. In keeping with the fact that AA was not seriously injured, AA did not visit any hospital emergency room following the accident. To the extent that AA experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely resolved within a few weeks of the accident. Even so, following a purported follow-up examination of AA on November 8, 2021, Reyes, Heidemann, and Avila billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that AA presented with problems of moderate to high severity at the follow-up examination.

(iii)    On December 17, 2021, an Insured named MJ was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that MJ's vehicle was drivable following the accident. The police further indicated that MJ was not injured and did not complain of any pain at the scene. In keeping with the fact that MJ was not seriously injured, MJ did not visit any hospital emergency room following the accident. To the extent that MJ experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely resolved within a few weeks of the accident. Even so, following a purported follow-up examination of MJ on January 27, 2022, Reyes, Heidemann, and Avila billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that MJ presented with problems of low to moderate severity at the follow-up examination.

(iv)     On April 21, 2022, an Insured named DR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that DR's vehicle was drivable following the accident. The police further indicated that that DR was not injured and did not complain of any pain at the scene. In keeping with the fact that DR was not seriously injured, DR did not visit any hospital emergency room following the accident. To the extent that DR experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely

resolved within a few weeks of the accident. Even so, following a purported follow-up examination of DR on May 2, 2022, Reyes, Jorge, and Heidemann billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that DR presented with problems of low to moderate severity at the follow-up examination.

(v)     On October 11, 2022, an Insured named LR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that LR's vehicle was drivable following the accident. The police further indicated that LR was not injured and did not complain of any pain at the scene. In keeping with the fact that LR was not seriously injured, LR did not visit any hospital emergency room following the accident. To the extent that LR experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely resolved within a few weeks of the accident. Even so, following a purported follow-up examination of LR on November 29, 2022, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99214, and thereby falsely represented that LR presented with problems of moderate to high severity at the follow-up examinations.

(vi)    On March 28, 2023, an Insured named RE was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that RE's vehicle was drivable following the accident. The police further indicated that RE was not injured and did not complain of any pain at the scene. In keeping with the fact that RE was not seriously injured, RE did not visit any hospital emergency room following the accident. To the extent that RE experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely resolved within a few weeks of the accident. Even so, following a purported follow-up examination of RE on April 26, 2023, New World, Reyes, Jorge, and Avila billed GEICO for the initial examination using CPT code 99213, and thereby falsely represented that RE presented with problems of low to moderate severity at the follow-up examination.

(vii)   On June 27, 2023, an Insured named HR was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that HR's vehicle was drivable following the accident. The police further indicated that HR was not injured and did not complain of any pain at the scene. In keeping with the fact that HR was not seriously injured, HR did not visit any hospital emergency room following the accident. To the extent that HR experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely resolved within a few weeks of the accident. Even so, following a purported follow-up examination of HR on August 11, 2023, New World, Reyes, Jorge, and Valdes billed GEICO for the follow-up examination using CPT code 99214, and thereby

53

falsely represented that HR presented with problems of moderate to high severity at the follow-up examination.

(viii)  On July 1, 2023, an Insured named HM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that HM's vehicle was drivable following the accident. The police further indicated that HM was not injured and did not complain of any pain at the scene. In keeping with the fact that HM was not seriously injured, HM did not visit any hospital emergency room following the accident. To the extent that HM experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely resolved within a few weeks of the accident. Even so, following a purported follow-up examination of HM on August 7, 2023, New World, Reyes, Jorge, and Avila billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that HM presented with problems of moderate to high severity at the follow-up examination.

(ix)   On October 30, 2023, an Insured named MM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that MM's vehicle was drivable following the accident. The police further indicated that MM was not injured and did not complain of any pain at the scene. In keeping with the fact that MM was not seriously injured, MM did not visit any hospital emergency room following the accident. To the extent that MM experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely resolved within a few weeks of the accident. Even so, following a purported follow-up examination of MM on December 5, 2023, New World, Reyes, Jorge, and Avila billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented MM presented with problems of moderate to high severity at the follow-up examination.

(x)    On December 19, 2023, an Insured named WM was involved in an automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, and that WM's vehicle was drivable following the accident. The police further indicated that WM was not injured and did not complain of any pain at the scene. In keeping with the fact that WM was not seriously injured, WM did not visit any hospital emergency room following the accident. To the extent that WM experienced any health problems at all as a result of the accident, they were of low or minimal severity at the outset, and were minimal or had completely resolved within a few weeks of the accident. Even so, following a purported follow-up examination of WM on January 10, 2024, New World, Reyes, Jorge, and Avila billed GEICO for the follow-up examinations using CPT code 99213, and thereby falsely represented that WM presented with problems of low to moderate at the follow-up examination.

163.    These are only representative examples. In the claims for follow-up examinations in Exhibit "1", the New World Medical Defendants routinely falsely represented that the Insureds presented with problems of low to moderate or moderate to high severity, when in fact the Insureds either did not have any genuine presenting problems at all as a result of their relatively minor automobile accidents at the time of the follow-up examinations, or else their presenting problems were minimal.

164.    In the claims for follow-up examinations identified in Exhibit "1", the New World Medical Defendants routinely falsely represented that the Insureds presented with problems of low to moderate severity and moderate to high severity in order to create a false basis for their charges for the examinations under CPT codes 99213 and 99214 because follow-up examinations under CPT codes 99213 and 99214 are reimbursable at higher rates than examinations involving presenting problems of minimal severity, or no severity.

165.    In the claims for follow-up examinations identified in Exhibit "1", the New World Medical Defendants routinely falsely represented that the Insureds presented with problems of low to moderate severity or moderate to high severity in order to create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

**b.    Misrepresentations Regarding the Results of the Follow-Up Examinations**

166.    Pursuant to the CPT Assistant, when the New World Medical Defendants billed for their putative follow up examinations under CPT codes 99213 and 99214, they represented that the physician or other health care practitioner who performed the examinations – virtually always Avila – performed at least two of the following three components: (i) took legitimate patient histories, (ii) conducted legitimate physical examinations; and (iii) engaged in legitimate medical decision-making.

167.    In actuality, however, Avila did not take any legitimate patient histories, conduct any legitimate physical examinations, or engage in any legitimate medical decision-making at all.

168.    Rather, following the purported follow-up examinations, New World Medical, Reyes, Heidemann, Jorge, and Avila simply: (i) reiterated the false, boilerplate "diagnoses" from the Insureds' initial examinations; and either (ii) caused the Insureds to be referred for even more medically unnecessary physical therapy services, despite the fact that the Insureds purportedly already had received extensive physical therapy services that supposedly had not been successful in resolving their purported pain symptoms; or (iii) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

169.    In the claims for initial examinations in Exhibit "1", the New World Medical Defendants routinely fraudulently misrepresented that the follow-up examinations were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)    the putative follow-up examinations were illusory, with outcomes that were pre-determined to result in substantially-identical, false "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentation;

(ii)    the charges for the putative follow-up examinations misrepresented the nature and extent of the examinations; and

(iii)    the New World Medical Defendants never were eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as they operated in pervasive violation of Florida law.

### 3.    The Fraudulent Charges for PENS Treatments at New World Medical

170.    Pursuant to the boilerplate diagnosis that they provided to virtually every Insured at the conclusion of their ersatz examinations, the New World Medical Defendants purported to provide many Insureds with a large number of medically-unnecessary PENS treatments.

171.     The New World Medical Defendants then billed the PENS treatment to GEICO under CPT code 64999, typically resulting in charges of $650.00, per Insured, for each date of service on which they purported to provide the PENS treatment.

172.     In the claims identified in Exhibit "1", the New World Medical Defendants generally billed for at least five, and sometimes more than 10, PENS sessions per Insured, frequently resulting in charges of at least $3,000.00, and often more than $6,000.00 per Insured who purportedly received the treatment.

173.     Like all of the other Fraudulent Services that the New World Defendants purported to provide, the charges for the PENS treatments were fraudulent in that they falsely represented that the New World Medical Defendants were entitled to payment in the first place, when in fact they were not because they operated in violation of Florida law.

174.     The charges for the PENS treatments also were fraudulent in that they were medically unnecessary and were performed – to the extent that they were performed at all – pursuant to the New World Defendants' predetermined fraudulent protocol.

175.     In a legitimate clinical setting, PENS is a procedure that combines the features of electro-acupuncture and transcutaneous electrical nerve stimulation, whereby electrical current is applied through the skin to provide patients with pain control. PENS treatments are administered through fine needle-like electrodes that are placed in close proximity to the painful area and stimulate peripheral sensory nerves in the soft tissue.

176.     According to guidelines published by the Centers for Medicare and Medicaid Services ("CMS"), if pain is effectively controlled through PENS, then implantation of electrodes is warranted.

177.     CMS further instructs that physicians generally should be able to determine whether a patient is likely to derive a significant therapeutic benefit from continuing use of implanted electrodes within a one-month trial period.

178.     CMS further instructs that a patient can be taught how to utilize implanted electrodes and, once this is accomplished, can use them safely and effectively without physician supervision. Consequently, it is inappropriate for a patient to visit his/her physician, physical therapist, or an outpatient clinic on a continuing basis for treatment of pain with PENS treatments.

179.     Even so, the New World Medical Defendants routinely purported to provide large numbers of medically unnecessary PENS treatments to Insureds on an outpatient basis, in order to maximize the amount of fraudulent billing they could submit to GEICO and other insurers.

180.     Moreover, to the extent that the New World Medical Defendants actually provided any electrical stimulation treatments to Insureds in the first instance, the treatments consisted of ordinary electrical stimulation, not legitimate PENS treatments

181.     Electrical stimulation treatments are billable at a much lower rate than PENS treatments.

182.     The New World Medical Defendants deliberately misrepresented the electrical stimulation treatments they purported to provide to be PENS treatments in a calculated attempt to overcharge GEICO for the electrical stimulation treatments.

**4.      The Fraudulent Charges for HME at New World Medical**

183.     As part of their fraudulent scheme, the New World Medical Defendants purported to provide many Insureds with durable medical equipment, namely a lower back brace known as a lumbosacral orthotic ("LSO").

184.    As set forth in Exhibit "1", the New World Medical Defendants then billed GEICO for the LSOs under Health Care Common Procedure Coding System ("HCCPCS") code L0637, typically resulting in a charge of $850.00 to $1,800.00 for each LSO they supposedly provided.

185.    Like the New World Medical Defendants' charges for the other Fraudulent Services, the charges for the LSOs were fraudulent in that they misrepresented the New World Medical Defendants' eligibility to collect PIP Benefits in the first instance.

186.    In fact, and as set forth herein, the New World Medical Defendants never were eligible to collect PIP Benefits, inasmuch they operated their practice in violation of Florida law.

187.    Moreover, the New World Medical Defendants' charges for the LSOs identified in Exhibit "1" also were fraudulent in that they misrepresented the medical necessity of the LSOs.

188.    The LSO is a rigid, custom-fitted, lower-back brace designed to restrict the movement of the patient's torso and support the patient's lumbar spine. Because of its rigidity and required placement on the patient's lower back, an LSO must be custom-fitted in order for it to be properly utilized by the patient.

189.    In a legitimate clinical setting, an LSO is reserved for patients who exhibit spinal instability or for patients who have recently undergone spinal surgery.

190.    Because the LSO is designed to limit a patient's lumbar spine range of motion, its prescription is inconsistent with the goals of treatment designed to restore and increase range of motion and functionality of the lumbar spine.

191.    Along similar lines, the prescription and use of an LSO would be counterproductive to the goals of physical therapy treatment modalities, which seek to restore movement and functionality to the lumbar spine.

192.    In fact, the medically unnecessary prescription of an LSO – and resulting immobilization of the lumbar spine – may put the patient at a considerable risk of weakening muscles or even muscle atrophy of muscles in the lower back.

193.    Moreover, in a legitimate clinical setting, an LSO should not be prescribed to a patient before the patient had attempted and failed a legitimate course of conservative treatment, much less simultaneously to a prescription for conservative treatment such as physical therapy.

194.    The Insureds in the claims identified in Exhibit "1" did not suffer from spinal instability. In fact, virtually none of the Insureds in the claims identified in Exhibit "1" suffered any serious injuries at all as the result of their minor accidents, much less health problems requiring spinal surgery and subsequent immobilization of their spine.

195.    The Insureds in the claims identified in Exhibit "1" generally had not attempted and failed a legitimate course of conservative treatment prior to their receipt of a prescription for an LSO.

196.    Even so, the New World Medical Defendants routinely purported to provide medically unnecessary LSOs to the Insureds in the claims identified in Exhibit "1", despite that fact that:

(i)    the Insureds did not suffer from spinal instability and were not recovering from spinal surgery;

(ii)   the New World Medical Defendants did not measure or fit the devices for the Insureds;

(iii)  the Insureds had not yet failed any legitimate course of conservative treatment and, in fact, often were prescribed the LSO within days of their minor accidents; and

(iv)   the Insureds were often concomitantly referred for physical therapy at New World Medical, the supposed purpose of which was to restore the range of motion and functionality of, among other things, the Insureds' lumbar spine.

197.    For example:

(i)     On July 2, 2021, an Insured named LB was involved in an automobile accident. On July 9, 2021, LB presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed LB with a medically unnecessary LSO, despite the fact that LB: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, HM's range of motion. New World Medical, Reyes, Avila, and Heidemann then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $850.00 for the medically unnecessary LSO.

(ii)    On September 24, 2021, an Insured named HM was involved in an automobile accident. On September 29, 2021, HM presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed HM with a medically unnecessary LSO, despite the fact that HM: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, HM's range of motion. New World Medical, Reyes, Avila, and Heidemann then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $850.00 for the medically unnecessary LSO.

(iii)   On October 12, 2021, an Insured named GB was involved in an automobile accident. On October 13, 2021, GB presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed GB with a medically unnecessary LSO, despite the fact that GB: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, GB's range of motion. New World Medical, Reyes, Avila, and Heidemann the submitted a bill to GEICO under HCPCS code L06367, seeking reimbursement of $850.00 for the medically unnecessary LSO.

(iv)   On December 17, 2021, an Insured named MJ was involved in an automobile accident. On December 30, 2022, MJ presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed MJ with a medically unnecessary LSO, despite the fact that MJ: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had

not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, MJ's range of motion. New World Medical, Reyes, Avila, and Heidemann then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $850.00 for the medically unnecessary LSO.

(v)     On March 17, 2022, an Insured named FD was involved in an automobile accident. On March 23, 2022, FD presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed FD with a medically unnecessary LSO, despite the fact that FD: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, FD's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $850.00 for the medically unnecessary LSO.

(vi)    On July 25, 2022, an Insured named JC was involved in an automobile accident. On July 26, 2022, JC presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed JC with a medically unnecessary LSO, despite the fact that JC: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, JC's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $850.00 for the medically unnecessary LSO.

(vii)   On October 1, 2022, an Insured named RO was involved in an automobile accident. On October 3, 2022, RO presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed RO with a medically unnecessary LSO, despite the fact that RO: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, RO's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(viii)   On November 1, 2022, an Insured named OL was involved in an automobile accident. On November 4, 2022, OL presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed OL with a medically unnecessary LSO, despite the fact that OL: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, OL's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(ix)   On November 24, 2022, an Insured named BL was involved in an automobile accident. On November 25, 2022, BL presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed BL with a medically unnecessary LSO, despite the fact that BL: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, BL's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(x)   On January 12, 2023, an Insured named OB was involved in an automobile accident. On January 13, 2022, OB presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed OB with a medically unnecessary LSO, despite the fact that OB: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, OB's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xi)   On March 28, 2023, an Insured named RE was involved in an automobile accident. On March 30, 2023, RE presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed RE with a medically unnecessary LSO, despite the fact that RE: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly

referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, RE's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xii)   On July 1, 2023, an Insured named HM was involved in an automobile accident. On July 6, 2023, HM presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed HM with a medically unnecessary LSO, despite the fact that HM: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, HM's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xiii)  On July 10, 2023, an Insured named SM was involved in an automobile accident. On October 26, 2023, SM presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed SM with a medically unnecessary LSO, despite the fact that SM: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, SM's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code LO637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xiv)   On October 15, 2023, an Insured named PM was involved in an automobile accident. On October 26, 2023, PM presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed PM with a medically unnecessary LSO, despite the fact that PM: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, PM's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code LO637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xv)     On December 18, 2023, an Insured named WM was involved in an automobile accident. On December 19, 2024, WM presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed WM with a medically unnecessary LSO, despite the fact that WM: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment, and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, WM's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xvi)    On January 22, 2024, an Insured named JG was involved in an automobile accident. On January 25, 2024, JG presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed JG with a medically unnecessary LSO, despite the fact that JG: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, JG's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xvii)   On February 5, 2024, an Insured named CM was involved in an automobile accident. On February 5, 2024, CO presented to New World Medical for an initial examination by Avila.  At the conclusion of the purported initial examination, New World Medical and Avila prescribed CO with a medically unnecessary LSO, despite the fact that CO: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, CO's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xviii)  On February 13, 2024, an Insured named AN was involved in an automobile accident. On February 16, 2024, AN presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed AN with a medically unnecessary LSO, despite the fact that AN: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was

concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, AN's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xix)   On March 20, 2024, an Insured named PG was involved in an automobile accident. On March 20, 2024, PG presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed PG with a medically unnecessary LSO, despite the fact that PG: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment; and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, PG's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

(xx)   On April 22, 2024, an Insured named LV was involved in an automobile accident. On April 24, 2024, LV presented to New World Medical for an initial examination by Avila. At the conclusion of the purported initial examination, New World Medical and Avila prescribed LV with a medically unnecessary LSO, despite the fact that LV: (a) was never legitimately fitted for the device; (b) did not suffer from spinal instability and was not recovering from spinal surgery; (c) had not yet failed a legitimate course of conservative treatment, and, (d) in fact, was concomitantly referred by Avila for physical therapy treatment at New World Medical, the putative purpose of which was to increase, rather than decrease, LV's range of motion. New World Medical, Reyes, Avila, and Jorge then submitted a bill to GEICO under HCPCS code L0637, seeking reimbursement of $1,800.00 for the medically unnecessary LSO.

198.   These are only representative examples. In virtually of the claims for LSOs identified in Exhibit "1", New World Medical and Reyes falsely represented that the prescribed LSOs were medically necessary, when in fact they were not.

3.      **The Violations of the Patient Brokering Act and the Anti-Kickback Statute**

199.    Artang's ability to bill GEICO and other insurers depended on Artang's ability to gain access to patients who were willing to report for x-rays, regardless of whether those services were medically necessary.

200.    However, Artang did not provide health care services at any single, fixed location, and did not engage in any legitimate advertising or marketing efforts aimed at developing a patient base or goodwill.

201.    Instead, Artang operated on an itinerant and sporadic basis from the offices of its referral sources – including the offices of New World Medical and Reyes – to whom Artang and Pupo paid unlawful compensation in exchange for x-ray referrals.

202.    In exchange for this unlawful compensation, the New World Medical Defendants caused more than 90 percent of the Insureds who supposedly received treatment from New World Medical to be referred to Artang for medically unwarranted x-rays.

203.    In keeping with the fact that the referrals from New World Medical to Artang were predicated on unlawful compensation, rather than medical necessity, in a legitimate clinical setting, when a patient presents with a soft tissue injury such as a sprain or strain arising from an automobile accident, the initial standard of care is conservative treatment comprised of rest, ice, compression, and – if applicable – elevation of the affected body party.

204.    Furthermore, in a legitimate clinic setting, x-rays should not be used as an initial form of diagnostic imaging in the treatment of patients complaining of soft tissue injuries such as sprains and strains secondary to automobile accidents.

205.    It is generally inappropriate to subject Insureds with soft tissue injuries to x-rays, let alone multiple x-rays, in the immediate aftermath of the injury, before the patient has first tried

a more conservative course of rest, ice, compression, and – if applicable – elevation of the affected body part.

206.    This is because the substantial majority of soft tissue injuries such as sprains and strains will resolve over a period of weeks through conservative treatment, or no treatment at all, and unnecessary diagnostic imaging can be counterproductive and even harmful to the patient.

207.    Even so, in the claims identified in Exhibit "1", the New World Medical Defendants routinely referred Insureds to Artang for x-rays within days of their accidents or even on the same day of their accidents, before the Insureds had first tried a more conservative course of treatment, and despite the fact that the Insureds had not suffered any injuries more serious than basic soft tissue injuries that did not require x-rays.

208.    For example:

(i)     On September 24, 2021, an Insured named HM was involved in an automobile accident. On September 29, 2021, HM presented to New World Medical for an initial examination by Avila. Following the purported initial examination, Avila diagnosed HT with a sprain of the lumbar spine, pain in the left shoulder, and pain in the right and left hip. To the extent that the Insured suffered any injuries at all in the accident, the injuries were minor soft tissue injuries that did not require x-rays. Even so, at the conclusion of the purported initial examination, Avila caused HM to be referred to Artang for a medically unnecessary x-ray of HM's right shoulder and left leg in exchange for the unlawful compensation paid by Artang and Pupo. On September 29, 2021, Artang and Albert purportedly provided HM with a right shoulder and left leg x-ray at New World Medical. Thereafter, Artang, Pupo, and Albert billed GEICO for the medically unnecessary x-rays of HM's right shoulder and left leg.

(ii)    On April 21, 2022, an Insured named DR was involved in an automobile accident. On May 2, 2022, DR presented to New World Medical for an initial examination by Avila. Following the purported initial examination, Avila diagnosed DR with a sprain of the lumbar, cervical, and thoracic spine, pain in the right shoulder and right wrist, and a strain of the muscle, fascia, and tendon of abdomen. To the extent that the Insured suffered any injuries at all in the accident, the injuries were minor soft tissue injuries that did not require x-rays. Even so, at the conclusion of the purported initial examination, Avila caused DR to be referred to Artang for a medically unnecessary x-ray of DR's pelvis in exchange for the unlawful compensation paid by Artang and Pupo. On May 2, 2022, Artang and Albert

purportedly provided DR with a pelvis x-ray at New World Medical. Thereafter, Artang, Pupo, and Albert billed GEICO for the medically unnecessary x-rays of DR's pelvis.

(iii)    On November 1, 2022, an Insured named OL was involved in an automobile accident. On November 4, 2022, OL presented to New World Medical for an initial examination by Avila. Following the purported initial examination, Avila diagnosed OL with a sprain of the cervical, thoracic, and lumbar spine, pain in the right shoulder, and pain in the right knee. To the extent that the Insured suffered any injuries at all in the accident, the injuries were minor soft tissue injuries that did not require x-rays. Even so, at the conclusion of the purported initial examination, Avila caused OL to be referred to Artang for a medically unnecessary x-ray of OL's right ankle in exchange for the unlawful compensation paid by Artang and Pupo. On November 4, 2022, Artang and Albert purportedly provided OL with a right ankle x-ray at New World Medical. Thereafter, Artang, Pupo, and Albert billed GEICO for the medically unnecessary x-ray of OL's right ankle.

(iv)    On July 18, 2023, an Insured named ND was involved in an automobile accident. On July 19, 2023, ND presented to New World Medical for an initial examination by Avila. Following the purported initial examination, Avila diagnosed ND with a sprain of the cervical, thoracic, and lumbar spine, pain in the right and left shoulders, pain in the left hand, and pain in the left knee. To the extent that the Insured suffered any injuries at all in the accident, the injuries were minor soft tissue injuries that did not require x-rays. Even so, at the conclusion of the purported initial examination, Avila caused ND to be referred for a medically unnecessary x-ray of ND's right knee in exchange for the unlawful compensation paid by Artang and Pupo. On July 19, 2023, Artang and Albert purportedly provided ND with a right knee x-ray at New World Medical. Thereafter, Artang, Pupo, and Albert billed GEICO for the medically unnecessary x-ray of ND's right knee.

(v)    On November 1, 2023, an Insured named AC was involved in an automobile accident. On November 1, 2023, AC presented to New World Medical for an initial examination by Avila. Following the purported initial examination, Avila diagnosed AC with a sprain of the cervical, thoracic, and lumbar sprain, and pain in the right and left shoulders. To the extent that the Insured suffered any injuries at all in the accident, the injuries were minor soft tissue injuries that did not require x-rays. Even so, at the conclusion of the purported initial examination, Avila caused AC to be referred for a medically unnecessary x-ray of AC's chest in exchange for the unlawful compensation paid by Artang and Pupo. On November 1, 2023, Artang and Albert purportedly provided AC with a chest x-ray at New World Medical. Thereafter, Artang, Pupo, and Albert billed GEICO for the medically unnecessary x-ray of of AC's chest.

209.   These are only representative examples. In the claims identified in Exhibits "1" and "2", the New World Medical Defendants routinely caused Insureds to be referred to Artang for medically unnecessary x-rays in exchange for unlawful compensation from the Artang and Pupo.

210.   It is improbable that two or more Insureds involved in any one of the minor automobile accidents in the claims identified in Exhibit "1" would present to New World Medical on or about the exact same dates after their accidents.

211.   It is even more improbable – to the point of impossibility – that the Insureds would all require x-rays as the result of their minor accidents, or that they would all be referred to Artang for x-rays, often for multiple x-rays, on or about the exact same dates after their accidents.

212.   Even so, in keeping with the fact that the referrals from New World Medical to Artang were predicated on unlawful compensation, rather than medical necessity, the New World Medical Defendants routinely caused multiple Insureds, who had been involved in the same minor accident, to be referred from New World Medical to Artang for medically unwarranted x-rays.

213.   For example:

(i)   On August 15, 2021, two Insureds – LE and JM – were involved in the same automobile accident. Thereafter, both Insureds presented at New World Medical for initial examinations by Avila on August 27, 2021. At the conclusion of the initial examinations, New World Medical and Avila – incredibly – referred both Insureds to Artang for medically unnecessary x-rays on the exact same date, August 27, 2021.

(ii)   On April 18, 2022, two Insureds – PM and LM – were involved in the same automobile accident. Thereafter, both Insureds presented at New World Medical for initial examinations by Avila on April 26, 2022. At the conclusion of the initial examinations, New World Medical and Avila – incredibly – referred both Insureds to Artang for medically unnecessary x-rays one day apart, on April 26, 2022, and April 27, 2022.

(iii)   On July 25, 2022, two Insureds – JJ and JC – were involved in the same automobile accident. Thereafter, both Insureds presented at New World Medical for initial examinations by Avila on July 25, 2022. At the conclusion of the initial

examinations, New World Medical and Avila – incredibly – referred both insureds to Artang for medically unnecessary x-rays on <u>the exact same date</u>, July 26, 2022.

(iv)     On August 30, 2022, two Insureds – YS and DB – were involved in the same automobile accident. Thereafter, both Insureds presented at New World Medical for initial examinations by Avila on September 6, 2022. At the conclusion of the initial examinations, New World Medical and Avila – incredibly – referred both Insureds to Artang for medically unnecessary x-rays on <u>the exact same date</u>, September 7, 2022.

(v)      On November 15, 2022, two Insureds GS and DS – were involved in the same automobile accident. Thereafter, both Insureds presented at New World Medical for initial examinations by Avila on November 17, 2022. At the conclusion of the initial examinations, New World Medical and Avila – incredibly – referred both Insureds to Artang for medically unnecessary x-rays on the <u>exact same date</u>, November 17, 2022.

(vi)     On November 24, 2022, two Insureds – BL and MR– were involved in the same automobile accident. Thereafter, both Insureds presented at New World Medical for initial examinations by Avila on November 25, 2022. At the conclusion of the initial examinations, New World Medical and Avila – incredibly – referred both Insureds to Artang for medically unnecessary x-rays on the <u>exact same date</u>, November 25, 2022.

(vii)    On January 26, 2023, two Insureds – NB and VM – were involved in the same automobile accident. Thereafter, both Insureds presented at New World Medical for initial examinations by Avila on January 26, 2023. At the conclusion of the initial examinations, New World Medical and Avila – incredibly – referred both Insureds to Artang for medically unnecessary x-rays on the <u>exact same date</u>, January 26, 2023.

(viii)   On April 17, 2023, two Insureds – MT and AM – were involved in the same automobile accident. Thereafter, both Insureds presented at New World Medical for initial examinations by Avila on April 24, 2023. At the conclusion of the initial examinations, New World Medical and Avila – incredibly – referred both Insureds to Artang for medically unnecessary x-rays on the <u>exact same date</u>, April 24, 2023.

(ix)     On January 16, 2024, three Insureds – LC, JC, and JC – were involved in the same automobile accident. Thereafter, all three Insureds presented at New World Medical for initial examinations by Avila on January 16, 2024. At the conclusion of the initial examinations, New World Medical and Avila – incredibly – referred all three Insureds to Artang for medically unnecessary x-rays on the <u>exact same date</u>, January 16, 2024.

(x)      On January 22, 2024, two Insureds – JG and MV – were involved in the same automobile accident. Thereafter, both Insureds presented at New World Medical

for initial examinations by Avila on January 25, 2024. At the conclusion of the initial examinations, New World Medical and Avila – incredibly – referred both Insureds to Artang for medically unnecessary x-rays on the <u>exact same date</u>, January 25, 2024.

214.     These are only representative examples. In the claims identified in Exhibit "1", the New World Medical Defendants frequently referred two or more GEICO Insureds to Artang for medically unnecessary x-rays, on or about the exact same dates after their accidents.

215.     In this context, Albert, who at all relevant times purported to be the medical director at Artang, was never a legitimate medical director for Artang.

216.     Had Albert fulfilled his statutory duties as medical director, he would have noted – among other things – that Artang's billing data was fraudulent and unlawful.

217.     Furthermore, had Albert fulfilled his statutory duties as a medical director, he would have noted among other things – that Artang's patient referral contracts and/or agreements violated the Patient Brokering Act and Anti-Kickback Statute.

218.     Albert failed to do so because he was never the legitimate medical director at Artang.

### III.   The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO

219.     To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of bills and treatment reports through New World Medical and Artang to GEICO, containing thousands of individual charges, seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment.

220.     The claims that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following, material respects:

(i)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Defendants were

in compliance with Florida law and therefore were eligible to collect PIP Benefits in the first instance, when in fact they were not.

(ii)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact they were not.

(iii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed solely to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv)    The HCFA-1500 forms reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

## IV.    <u>The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance</u>

221.    The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO.

222.    To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, the Defendants systematically concealed their fraud and have gone to great lengths to accomplish this concealment.

223.    For instance, the Defendants knowingly misrepresented and concealed facts in an effort to prevent discovery that Defendants operated in violation of Florida law and therefore were ineligible to collect PIP Benefits in the first instance.

224.    The Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically unnecessary, and frequently never were performed in the first instance.

225.    The Defendants have hired law firms to pursue collection of the fraudulent charges for the Fraudulent Services from GEICO and other insurers if the charges were not promptly paid in full.

226.    GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $3,000,000.00.

227.    Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

**FIRST CAUSE OF ACTION**
**Against New World Medical and Artang**
**(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

228.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-227 above.

229.    There is an actual case and controversy between GEICO and the Clinic Defendants regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have been submitted to GEICO.

230.    The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because they unlawfully were operated in violation of Florida law.

231.    The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided or billed to GEICO.

232.    The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

233.    The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

234.    The Clinic Defendants have no right to receive payment for any pending bills submitted to GEICO because the billing for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

235.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment, 28 U.S.C. §§ 2201 and 2202, declaring that New World Medical and Artang have no right to receive payment for any pending bills submitted to GEICO.

**SECOND CAUSE OF ACTION**
**Against Reyes**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

236.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-227 above.

237.    New World Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

238.    Reyes knowingly conducted and/or participated, directly or indirectly, in the conduct of New World Medical's affairs through a pattern of racketeering activity consisting of

repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that New World Medical was not eligible to receive under the No-Fault Law because: (i) New World Medical unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the New World Medical Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

239.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

240.    New World Medical's business is racketeering activity, inasmuch as the enterprise exists for the purport of submitted fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Reyes operated New World Medical, inasmuch as New World Medical was not engaged in legitimate health care practice, and acts of mail fraud therefore were essential in order for New World Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the New World Medical Defendants continue to attempt collection on the fraudulent billing submitted through New World Medical to the present day.

241.    New World Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by New World Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

242.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $685,000.00 pursuant to the fraudulent bills submitted through the New World Medical enterprise.

243.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## THIRD CAUSE OF ACTION
### Against Reyes, Heidemann, Jorge, and Avila
### (Violation of RICO, 18 U.S.C. § 1962(d))

244.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-227, above.

245.    New World Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

246.    Reyes, Heidemann, Jorge, and Avila are employed by or associated with the New World Medical.

247.    Reyes, Heidemann, Jorge, and Avila knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of New World Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to

submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that New World Medical was not eligible to receive under the No-Fault Law because: (i) New World Medical unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

248.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

249.    Reyes, Heidemann, Jorge, and Avila knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

250.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $685,000.00 pursuant to the fraudulent bills submitted through the New World Medical enterprise.

251.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Against the New World Medical Defendants**
**(Under Fla. Stat. 501.201 et. seq.)**

252.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-227 above.

253.    The New World Medical Defendants are actively engaged in trade and commerce in the State of Florida.

254.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

255.    The New World Medical Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO.

256.    The bills and supporting documents submitted or caused to be submitted by the New World Medical Defendants to GEICO were fraudulent in that they misrepresented: (i) New World Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

257.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous. Additionally, the conduct of the New World Medical Defendants has been materially injurious to GEICO and its Insureds.

258.     The conduct of the New World Medical Defendants was the actual and proximate cause of the damages sustained by GEICO.

259.     The New World Medical Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $685,000.00.

260.     By reason of the New World Medical Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

### FIFTH CAUSE OF ACTION
### Against the New World Medical  Defendants
### (Common Law Fraud)

261.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-227, above.

262.     The New World Medical Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through New World Medical for the Fraudulent Services.

263.     The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that New World Medical was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

264.     The New World Medical Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through New World Medical that were not reimbursable.

265.     GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $685,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the New World Medical Defendants through New World Medical.

266.     The New World Medical Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

267.     Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## <u>SIXTH CAUSE OF ACTION</u>
### Against the New World Medical Defendants
### (Unjust Enrichment)

268.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-227, above.

269.     As set forth above, the New World Medical Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

270.     When GEICO paid the bills and charges submitted or caused to be submitted by the New World Medical Defendants through New World Medical, it reasonably believed that it was

legally obligated to make such payments based on New World Medical Defendants' improper, unlawful, and/or unjust acts.

271.    The New World Medical Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the New World Medical Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

272.    The New World Medical Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

273.    By reason of the above, the New World Medical Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $685,000.00.

### SEVENTH CAUSE OF ACTION
**Against Pupo**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

274.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-227, above.

275.    Artang is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affect interstate commerce.

276.    Pupo knowingly has conducted and/or participated, directly or indirectly, in the conduct of Artang's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Artang was not eligible to receive under the No-Fault Law because: (i) Artang unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; and (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely

to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

277.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2".

278.    Artang's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Pupo operated Artang, inasmuch as Artang was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Artang to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Artang Defendants continue to attempt collection on the fraudulent billing submitted through Artang to the present day.

279.    Artang is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Artang in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

280.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $2,400,000.00 pursuant to the fraudulent bills submitted through Artang.

281.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## EIGHTH CAUSE OF ACTION
### Against Pupo and Albert
### (Violation of RICO, 18 U.S.C. § 1962(d))

282.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-227, above.

283.    New World Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

284.    Pupo and Albert were employed by or associated with the Artang enterprise.

285.    Pupo and Albert knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Artang's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over five years seeking payments that Artang was not eligible to receive under the No-Fault Law because: (i) Artang unlawfully was operated in violation of Florida law; (ii) the underlying Fraudulent Services were not lawfully provided or billed to GEICO; and (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to a pre-determined fraudulent protocol designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

286.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

287.    Pupo and Albert knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

288.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $2,4000,000.00 pursuant to the fraudulent bills submitted through the Artang enterprise.

289.    By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**NINTH CAUSE OF ACTION**
**Against the Artang Defendants**
**(Under Fla. Stat. 501.201 et. seq.)**

290.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-227, above.

291.    The Artang Defendants are actively engaged in trade and commerce in the State of Florida.

292.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

293.    The Artang Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

294.    The bills and supporting documents submitted by the Artang Defendants to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Artang's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services

were lawfully provided and billed to GEICO; (iii) that the Fraudulent Services were medically necessary.

295.    Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.   Additionally, the conduct of the Artang Defendants has been materially injurious to GEICO and its Insureds.

296.    The conduct of the Artang Defendants was the actual and proximate cause of the damages sustained by GEICO.

297.    The Artang Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $2,4000,000.00

298.    By reason of the Artang Defendants' conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**TENTH CAUSE OF ACTION**
**Against the Artang Defendants**
**(Common Law Fraud)**

299.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-227, above.

300.    The Artang Defendants intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Artang for the Fraudulent Services.

301.    The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that Artang was in compliance with Florida law, and eligible to collect PIP Benefits in the first instance, when in fact it was not; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were

not eligible for PIP reimbursement; and (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary.

302. The Artang Defendants intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Artang that were not reimbursable.

303. GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $2,4000,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Artang Defendants through Artang.

304. The Artang Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

305. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### ELEVENTH CAUSE OF ACTION
**Against the Artang Defendants**
**(Unjust Enrichment)**

306. GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-227, above.

307. As set forth above, the Artang Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

308.    When GEICO paid the bills and charges submitted or caused to be submitted by the Artang Defendants through Artang it reasonably believed that it was legally obligated to make such payments based on the Artang Defendants' improper, unlawful, and/or unjust acts.

309.    The Artang Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Artang Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

310.    The Artang Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

311.    By reason of the above, the Artang Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $2,400,000.00.

## JURY DEMAND

312.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.    On the First Cause of Action against New World Medical and Artang, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that New World Medical and Artang have no right to receive payment for any pending bills submitted to GEICO;

B.    On the Second Cause of Action against Reyes, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $685,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.    On the Third Cause of Action against Reyes, Heidemann, Jorge, and Avila, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of

$685,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.      On the Fourth Cause of Action against the New World Medical Defendants, compensatory damages in an amount to be determined at trial but in excess of $685,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

E.      On the Fifth Cause of Action against the New World Medical Defendants, compensatory damages in an amount to be determined at trial but in excess of $685,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

F.      On the Sixth Cause of Action against the New World Medical Defendants, more than $685,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

G.      On the Seventh Cause of Action against Pupo, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $2,400,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

H.      On the Eighth Cause of Action against Pupo and Albert, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess $2,400,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

I.      On the Ninth Cause of Action against the Artang Defendants, compensatory damages in an amount to be determined at trial but in excess of $2,400,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

J.      On the Tenth Cause of Action against the Artang Defendants, compensatory damages in an amount to be determined at trial but in excess of $2,400,000.00, together with

punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

K.     On the Eleventh Cause of Action against the Artang Defendants, more than $2,400,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated: October 28, 2024

*/s/ Kristen Wenger*
Max Gershenoff (FBN 1038855)
John P. Marino (FBN 814539)
Kristen Wenger (FBN 92136)
Lindsey R. Trowell (FBN 678783)
Yonatan M. Bernstein (FBN 1035899)
Katherine Jenkins (to be admitted pro hac vice)
RIVKIN RADLER, LLP
Riverplace Tower
1301 Riverplace Blvd.
Suite 1000
Jacksonville, FL 32207
Phone: (904) 791-8948
Facsimile: (904) 598-6225
Max.Gershenoff@rivkin.com
John.Marino@rivkin.com
Kristen.Wenger@rivkin.com
Lindsey.Trowell@rivkin.com
Yonatan.Bernstein@rivkin.com
Katherine.Jenkins@rivkin.com
*Counsel for Plaintiffs*